# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.  11-cv-02092-MSK-CBS

MARGARET MARTINEZ, MARIA ELENA CASTONON,
JORGE DOMINGUEZ RAMIREZ, CAROLINA CRUZ,
MARIA BERENICE CRUZ RAMOS, ROSA BAUTISTA,
PEDRO ROMAN, TEODORO RUEDA, MARTHA GARCIA,
ADELIA VALDEZ, GENOVEVA RODRIGUEZ,
MARIA DURAN, REFUGIO DE LA CRUZ,
JUAN RODRIGUEZ, EVA DE LA CRUZ, BARBARA JOJOLA,
LETICIA SILVA, RAFAEL CASTANEDA,
MARIA CHAVEZ EGUIA, JUANA MARTINEZ,
ALFREDO LEDEZMA, JOSE ESPITIA, JR.,
RAYMOND VALDEZ, JORGE TERRAZA MONTOYA,
MARICA LARIZ, PRUDENCIA DE LA ROSA,
MARIA NIEBLAS, JOSE ARRENDONDO,
MARIA VALASQUEZ, CARMEN BERMUDEZ,
PATRICIA CASTANEDA, JOSE JUAN RAMIREZ,
MARIA TRINIDAD OSORIO, TINA MONTEZ,
DORA LIZ CRUZ, MAYRA CARMONA, LETICIA JIMINEZ,
MAURICIO CACCIA, RITA ORALIA SIERRO,
LORENZO POSADA, MARIA MONTOYA, MARISELA SAYAGO,
MIGUEL TOLEDO, ROCIO AGUILERA, MARIA RAMIREZ,
OSCAR PEREZ, JUVENAL TORRES, CONSUELO TORRES,
HILDA CORDIEL, NANCY CRUZ RAMOS,
ESPERANZA RAMOS PADILLA, TANIA ANDRADE REYES,
HERIBERTO MARTINEZ, CYNTHIA MARTINEZ,
TANIA MARTINEZ, SERGIO SOSA JR., FELIPE CERVANTES,
SUSANA ORELLANA, IRMA SKINNER, LUIS GARCIA,
ROSA BOTELLO, MARIA DEL CARMEN CONTRERAS,
GLORIA FERNANDEZ, JAVIER HERNANDEZ,
LIDIA JAIME CARDENA, MARIA DEL CARMEN SALAZAR,
ESMERALDA OSEGUERA MARTINEZ, REYNA MORALES,
ANA MELGAR, GUSTAVO JACO,
MARIA de JACO, MARIO MOLINA, MARCO CHAVEZ,
YANIRA JACO, ANGEL BANUELOS, CESAR YANEZ,
MARISELA ROMERO, CLAUDIA JAVIER,
MAGDALENA GARCIA, ROSAURA L de MERAZ,
JUAN CARLOS ARRENDONDO, RAMON HOLGUIN, and
JOSE LUIS SANCHEZ, on behalf of themselves and all others similarly situated.

   Plaintiffs,

v.

NASH FINCH COMPANY d/b/a AVANZA
SUPERMARKET,

       Defendant.

---

### PLAINTIFFS' RESPONSE TO DEFENDANT NASH FINCH COMPANY'S SEPTEMBER 7, 2011 MOTION TO DISMISS PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND (# 14)

---

Plaintiffs, by and through their counsel of record, hereby submit Plaintiffs' Response To Defendant Nash Finch Company's September 7, 2011 Motion To Dismiss Plaintiffs' Amended Class Action Complaint And Jury Demand (# 14) (hereinafter referred to as "Defendant's Motion"). The Plaintiffs contend that they have alleged sufficient facts in their Amended Class Action Complaint and Jury Demand (# 3) to state claims for violation of the Colorado Consumer Protection Act, Fraud, and Civil Theft. In support, Plaintiffs state as follows:

### STATEMENT OF FACTS

From late June of 2008 through at least March of 2009 (*see* Amended Complaint, #3, p. 5., ¶ 28), Defendant Nash Finch Company employed a shelf-plus 10% pricing program in its Colorado (Avanza) grocery stores. *See* Amended Complaint, #3, p. 4, ¶ 20. As part of this pricing program, Defendant printed, displayed, and distributed to members of the public sales materials and brochures which stated purported prices of various grocery items at Avanza and compared those purported prices to the price of the same items at competing stores, showing the purported savings in cost for the items at Avanza. *See* Amended Complaint, #3, p. 5, ¶ 25. Further, Defendant placed pricing signs on its

store shelves which purported to state the prices of various items. *See* Amended Complaint, #3, p. 5, ¶ 26. Ultimately, Defendant did not charge its Avanza customers the prices shown on its shelves and in its sales materials/brochures as Avanza added 10% to the stated or advertised cost of its grocery items at the point of purchase (the cash register). *See* Amended Complaint, #3, p. 5, ¶ 27. Defendant's advertisements, displays, and sales materials utilized the language "A Great Way to Save – Plus 10% at the Register", which led customers, including the Plaintiffs, to reasonably believe that they were receiving 10% additional savings or discount at the point of purchase rather than a 10% additional charge. *See* id., p. 5, ¶ 30. The marketing techniques employed by Defendant during the shelf-plus 10% campaign confused and tricked shoppers, including the Plaintiffs, into thinking that they were paying a lower price for grocery items than was true. *See* id., p. 6, ¶ 32.

Plaintiffs were not aware that they would be charged an additional 10% at the point of purchase (*see* Amended Complaint, #3, p. 12, ¶ 79; *also* specific allegations for each individual Plaintiff throughout Plaintiffs' Amended Complaint alleges the information contained in ¶ 79). Furthermore, each of the Plaintiffs relied upon the misleading representations of Defendant's advertising, marketing, and signage (to wit: "A Great Way to Save – Plus 10% at the Register"), believing that they would be paying 10% less at the register than they actually did, resulting in financial harm to them. *See, e.g.,* Amended Complaint, #3, pp. 15 – 16, ¶¶ 98 – 99; *also,* specific allegations for each Plaintiff alleges the information contained in ¶¶ 98 – 99. As a result of this shelf-plus 10% pricing/marketing program, Defendant has already admitted liability and agreed to entry of

judgment in favor of six other individuals in a related Colorado state court case. *See Amended Complaint, #3, p. 6, ¶ 33.*

## **LEGAL STANDARD**

Defendant's Motion seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(6): failure to state a claim upon which relief can be granted. *See* Defendant's Motion, # 14, p. 1. As noted by the United States District Court for the District of Colorado:

> The Federal Rules of Civil Procedure provide that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.,* 336 F.3d 1194, 1201 (10th Cir.2003) (citations and quotation marks omitted). "A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon,* 935 F.2d 1106, 1109 (10th Cir.1991). The court also considers all documents attached to or referred to in the complaint. *General Steel Domestic Sales, LLC v. Hogan and Hartson, LLP,* 230 P.3d 1275, 1279 (Colo.Ct.App.2010).
>
> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 1950.
>
> *3 Furthermore, a court does not "weigh the potential evidence that parties may present at trial ... but [ ][ ] whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief can be granted." *Dubbs,* 336 F.3d at 1201.

HealthONE of Denver, Inc. v. UnitedHealth Group Inc., 2011 WL 1135015, 2 – 3 (D.Colo., 2011)(*Motion pursuant to 12(b)(6) denied as to HealthONE of Denver's Colorado*

*Consumer Protection Act (hereinafter "CCPA") Claim based on false representation).*

## ARGUMENT

**I.  Plaintiffs' CCPA Claim**

A.      <u>Burden of Proof</u>:  The Plaintiffs admit that they must prove each element of their CCPA claim.

B.      <u>Elements</u>:  The Plaintiff agrees with the Defendants' identification of the elements of a *prima facie* CCPA case.

C.      <u>The Complaint Sufficiently Alleges the First Element of the CCPA Claim</u>:

Defendant's Motion asserts that Plaintiffs have failed to allege facts showing deceptive conduct or that the "Plus 10% at the Register" Language is deceptive as a matter of law. *See* Defendant's Motion, #14, pp. 4, 8.  Defendants are incorrect in their assertion that Plaintiffs have failed to plead facts with sufficient particularity to establish that Defendant engaged in a deceptive practice or that the "Plus 10% at the Register" Language is deceptive as a matter of law.

1.  Plaintiffs Have Alleged Sufficient Facts to Show Deceptive Conduct

The <u>HealthONE of Denver, Inc.</u> Court, after finding that the plaintiff had pleaded sufficient facts to establish a plausible claim pursuant to Fed. R. Civ. P. 12(b)(6) analysis (*see* <u>HealthONE of Denver, Inc.</u>, 2011 WL 1135015 at 3 – 4), further recognized:

> **In addition, a plaintiff must meet the heightened pleading requirements pursuant to Rule 9(b) to prove a deceptive or unfair trade practice.** *Hansen v. Auto–Owners Ins. Co.,* No. 09–cv–02736, 2010 WL 749820, at *2 (D.Colo. Mar. 4, 2010); *Duran v. Clover Club Foods Co.* 616 F.Supp. 790, 793 (D.Colo.1985). **Rule 9(b) requires a complaint to "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof."** *Koch v. Koch Industries, Inc.,* 203 F.3d 1202, 1236 (10th Cir.2000) (citation omitted). **This is intended to "afford the defendants a fair notice of the plaintiff's**

claims and the factual ground upon which they are based." *S.E.C. v. Nacchio,* 438 F.Supp.2d 1266, 1277 (D.Colo.2006) (quoting *Koch,* 203 F.3d at 1236).

A court must remember that Rule 9(b) is read in conjunction with the principles of Rule 8, "which calls for pleadings to be 'simple, concise, and direct, ... and to be construed as to do substantial justice.' " *Schwartz v. Celestial Seasonings, Inc.,* 124 F.3d 1246, 1252 (10th Cir.1997) (quoting Fed.R.Civ.P. 8(e), (f)). **Additionally, the sufficiency of the complaint must be judged in its entirety rather than in a piecemeal fashion.** *Id.* at 1253 (quoting *Nolan Bros., Inc. v. U.S. for the Use of Fox Bros. Const. Co.,* 266 F.2d 143, 146 (10th Cir.1959)).

[6] **The purpose of heightened pleadings under Rule 9(b) is to put United on notice, so that it may prepare its case.** I find Plaintiffs' Complaint does adequately set forth the time and place of United's alleged unfair or deceptive trade practices so as to give notice to United. The Complaint alleges the dates United applied with the USPTO for use of the UNITEDHEALTHONE Name. (Compl., ¶¶ 26–28.) It then states that Plaintiffs contacted United by letter dated August 14, 2008, and September 9, 2008. ( *Id.,* ¶¶ 34–35.) Both letters requested United cease and desist from its use of the HEALTHONE mark in violation of federal and common law. ( *Id.*) Additionally, the Complaint states that United used the UNITEDHEALTHONE mark through nationwide advertisements, including radio, television, and direct mail flyers to residents of Colorado ( *id.,* ¶ 40), and these documents were attached to the Complaint. **I find from the foregoing that Plaintiffs adequately put United on notice as to the particulars of United's alleged unfair or deceptive trade practices.**

*5 **Moreover, a court must not allow particularity requirements to pervert and allow a "sophisticated defrauder[ ] [to] successfully [ ] conceal the details of their fraud."** *State Farm Mutual Auto. Ins. Co. v. Parrish,* 899 P.2d 285, 288–89 (Colo.Ct.App.1994). **In this case, although Plaintiffs do not mention the actual days and individual cities that United used the UNITEDHEALTHONE mark, the omission of such dates and places does not mean the Complaint lacks the necessary specificity required by Rule 9(b) given the actual facts alleged and documents attached to the Complaint.**

For the foregoing reasons, I find that Plaintiffs have sufficiently alleged with the necessary particularity United's unfair or deceptive trade practices to satisfy the first element of a CCPA claim. The motion to dismiss is thus denied as to that argument.

HealthONE of Denver, Inc., 2011 WL 1135015, 4 – 5 (Emphasis added).  As noted by the

Colorado Court of Appeals:

> Defendants next argue that pursuant to C.R.C.P. 9(b) an alleged CCPA violation must be pled specifically. Rule 9(b) requires that fraud or mistake averments state the circumstances constituting fraud or mistake with particularity. **We need not decide whether complaints alleging a CCPA violation require pleading with particularity under Rule 9(b) because we conclude the state's complaint satisfied the rule's more stringent pleading requirements.** See Duran v. Clover Club Foods Co., 616 F.Supp. 790, 793 (D.Colo.1985) (**CCPA claims are subject to Rule 9(b)'s particularity requirement; plaintiffs satisfied rule's requirement because it only requires that claim identify circumstances constituting fraud and plaintiffs alleged sufficient facts to apprise defendants of alleged deceptive trade practices' nature**); see also Heller v. Lexton-Ancira Real Estate Fund, Ltd., 1972, 809 P.2d 1016, 1022 (Colo.App.1990) (**even under Rule 9(b) it is sufficient to state main facts constituting fraud; amended complaint adequately set forth facts which put defendants on notice of CCPA claim**), rev'd on other grounds, 826 P.2d 819 (Colo.1992).

State ex rel. Suthers v. Mandatory Poster Agency, Inc., 260 P.3d 9, 13 (Colo.Ct.App.,

2009)(Emphasis added).  Neither Federal Rule 9(b) nor Colorado Rule 9(b) require

detailed allegations of "evidentiary facts." See Kamin v. Colorado Nat'l Bank, 648 F.Supp.

52, 53 (D.Colo., 1986); see also Scott Systems, Inc. v. Scott, 996 P.2d 775, 780

(Colo.Ct.App., 2000); see also Northwest Development, Inc. v. Dunn, 483 P.2d 1361, 1363

(Colo.Ct.App., 1971).

In the instant case, Defendant argues that Plaintiffs have failed to plead "the time,

place, and content of the false representations, the identity of the party making the false

statements, and the consequences of the false statement" and cites Koch v. Koch Ind.,

Inc., 203 F.3d 1202, 1236 (10th Cir., 2000). See Defendant's Motion, #14, pp. 4 – 5.  At its

heart, Defendant's Motion cleverly attempts to convince this Court that Plaintiffs' Amended

Complaint is deficient and somehow Defendant does not understand what Plaintiffs are

alleging the Defendant has done wrong.  For lack of a better term, this is simply spurious. Honestly, one wonders how Defendant can be found to complain *at all* about notice of Plaintiffs' allegations or the sufficiency of Plaintiffs' Amended Complaint considering the fact that Defendant *has already admitted liability and agreed to entry of judgment* in favor or at least six other Avanza shoppers on the shoppers' claims under the CCPA and for civil theft *for the very same conduct giving rise to the instant Complaint. See* Amended Complaint, #3, p. 6, ¶ 33; *see also* Exhibit B to Plaintiffs' Complaint, #2, pp. 157 – 158. Despite Defendant's protestations, however, Plaintiffs have pleaded sufficient facts with specificity to put Defendant on notice of Plaintiffs' claims so that Defendant may prepare its case (*see* HealthONE, *supra*) and, more importantly, have set forth sufficient facts to plausibly establish deceptive conduct on the part of Defendant.

Plaintiffs have alleged that Defendant did not charge Plaintiffs and its other customer the prices for products listed on the shelves or in its advertising but rather added 10% at the register, (*see* Amended Complaint, #3, p. 5, ¶ 27), despite the fact that Defendant deceptively advertised the 10% surcharge as "A Great Way to Save – Plus 10% at the Register" (*see* Amended Complaint, #3, p. 5, ¶ 30), and that this deceptive advertising was in effect from late June of 2008 through at least March of 2009 (*see* Amended Complaint, #3, p. 5, ¶ 28).  Plaintiffs have set forth Defendant's stores that each individual Plaintiff shopped at,[1] the frequency with which they shopped at same during the

---

[1] *See, e.g.,* Amended Complaint, #3, ¶¶ 75, 101, 110, 119, 128, 137, 146, 155, 164, 173, 182, 191, 200, 209, 218, 227, 236, 245, 254, 263, 272, 281, 290, 299, 308, 317, 326, 335, 344, 353, 362, 371, 380, 389, 398, 407, 416, 425, 434, 443, 452, 461, 470, 479, 488, 497, 506, 515, 524, 533, 542, 551, 560, 569, 578, 587, 596, 605, 614, 623, 632, 641, 650, 659, 668, 677, 686, 694, 703, 712, 721, 730, 739, 748, 757, 762, 771, 780, 789, 798, 807, 816, 825.

relevant period of time,[2] and the amounts they generally spent per visit to Defendant's stores.[3]   Additionally, each of the Plaintiffs has alleged that the language contained in **Defendant's** advertising, marketing, and signage (**to wit: "A Great Way to Save – Plus 10% at the Register"**) caused them to reasonably believe that they would be saving an additional 10% on the price of items at the register rather than being charged an additional 10% (*see, e.g.* Amended Complaint, #3, p. 12, ¶ 80; *also*, specific allegations for each individual Plaintiff alleges the information contained in ¶ 80 through the Amended Complaint).  Moreover, each of the Plaintiffs has alleged that they were not aware that they would be charged an additional 10% at the point of purchase (*see* Amended Complaint, #3, p. 12, ¶ 79; *also* specific allegations for each Plaintiff alleges the information contained in ¶ 79).   Furthermore, each of the Plaintiffs has alleged that they relied upon the misleading representations of Defendant's advertising, marketing, and signage (**to wit: "A Great Way to Save – Plus 10% at the Register"**), believing that they would be paying 10% less at the register than they actually did, resulting in financial harm to them. *See, e.g.,* Amended Complaint, #3, pp. 15 – 16, ¶¶ 98 – 99; *also*, specific allegations for each Plaintiff alleges the information contained in ¶¶ 98 – 99.

Based on the foregoing, Defendant cannot credibly claim that Plaintiff has failed to plead sufficient facts to put Defendant on notice or to state a plausible claim.  Defendant's reliance upon the similar Minnesota case (*Salinas, et. al., v. Nash Finch Company)* is equally misplaced. *See* Defendant's Motion, #14, p. 2, n. 1. In the <u>Salinas</u> case, that Court

---

[2] *See* Footnote 1.
[3] *See* Footnote 1. Plaintiffs did not specifically plead the amounts Plaintiff Margaret Martinez spent during each shopping trip. *See* Amended Complaint, #3, ¶¶ 73 – 100. Plaintiffs should be allowed to amend their Complaint to correct this oversight.

placed no small emphasis on factors such as specific dates plaintiffs shopped and what they specifically bought. *See* Exhibit B to Defendant's Motion, #14, pp. 14 – 16. It appears that the plaintiffs in the <u>Salinas</u> case failed to provide the sort of *evidentiary* information the <u>Salinas</u> Court was looking for. As pointed out above, however, neither Fed. R. Civ. P. 9(b) nor Colo. R. Civ. P. 9(b) require detailed allegations of "evidentiary facts," thus Defendant's arguments with respect to specific dates and specific items purchased ring hollow.

It should not be forgotten that *Defendant* decided to use the shelf-plus pricing plan and the deceptive language used in Defendant's advertising/stores. As part of that plan, Defendant overcharged at the cash register for *all* of its items while the shelf-plus pricing scheme was in place. As recognized by the Colorado Court of Appeals with respect to application of Rule 9(b):

> We recognize that courts must be sensitive to the risk that application of the requirement of particularity, prior to discovery, may permit sophisticated defrauders *289 successfully to conceal the details of their fraud. Furthermore, in applying the rule, courts must not focus so narrowly as to fail to take account of the general simplicity and flexibility contemplated by the rules. *See Christidis v. First Pennsylvania Mortgage Trust,* 717 F.2d 96 (3d Cir.1983); 5 C. Wright & Miller, *supra,* § 1298.

<u>State Farm Mut. Auto. Ins. Co. v. Parrish</u>, 899 P.2d 285, 288 - 289 (Colo.Ct.App., 1994).

Defendant simply has no legitimate argument under Fed. R. Civ. P. 8 or 9(b), <u>Ashcroft v. Iqbal</u>, or <u>Koch v. Koch Ind., Inc.</u> Plaintiffs have pleaded sufficient facts concerning the "time, place, and content of the false representations, the identity of the party making the false statements, and the consequences of the false statement" to put Defendant on notice of their claim. It is of no little import that Defendant does not anywhere in its Motion deny that it engaged in the shelf-plus pricing plan, utilized the "A

Great Way to Save – Plus 10% at the Register" language, or the time period in which Plaintiffs claim the program and language were used.  Indeed, it simply cannot. *See* Amended Complaint, #3, p. 6, ¶ 33.

   Plaintiff's Amended Complaint, read in its entirety, should be found sufficient to clear the 12(b)(6) and 9(b) hurdles.  To the extent that factual matter is insufficient or not pleaded with sufficient particularity, Plaintiffs should be allowed to amend their Amended Complaint to address any shortfalls. *See* <u>Gunningham v. Standard Fire Ins. Co.</u>, 2008 WL 4377451, 3 (D.Colo., 2008)(*Court allowed plaintiff to file an amended complaint after dismissal of plaintiff's negligent misrepresentation and deceit by fraud claims for failing to meet specificity requirements of Fed. R. Civ. P. 9(b)*).

   2. Plaintiffs Have Pleaded Sufficient Facts to Show the  "Plus 10% at the Register" Language is Deceptive as a Matter of Law

Defendant argues that Plaintiffs have failed to plead sufficient facts to establish that the advertisement stating "Plus 10% at the Register" is deceptive under the CCPA. *See* Defendant's Motion, #14, p. 8. Defendant relies on the fact that the statement is "literally true" and, at worst, susceptible to two meanings. *See* <u>id.</u>

   As recognized by the Colorado Supreme Court:

**Section 6-1-105(1)(e) requires that to establish a deceptive trade practice, the plaintiff must show that a defendant "knowingly makes a false representation."** Although we have not previously defined "false representation" within the context of the CCPA, we have discussed the types of deceptive trade practices that the CCPA seeks to prohibit. Considering our precedent and decisions of other jurisdictions, we conclude that a false representation must either induce a party to act, refrain from acting, or have the capacity or tendency to attract consumers.

**In *People ex rel. Dunbar,* we noted that deceptive trade practices can induce parties to act on the basis of false or misleading information, or**

11

**what we have previously referred to in non-CCPA cases as misrepresentations:** [FN9]

> FN9. This definition appears consistent with the court of appeals' statements, which refer to Rhino's "misrepresentations," while the statutory language of section 6-1-105(1)(e) requires a false representation. *Rocky Mountain Rhino Lining, Inc.,* 37 P.3d at 463.

> When consumers are induced to purchase inferior merchandise or services as a result of misleading solicitations, when the public is attracted to business concerns on the basis of statements falsely announcing the existence of products which are in fact non-existent, and when citizens discover that the product they have acquired carries with it a set of obligations which they did not intend to purchase, it is clear that the state's general and financial welfare is thereby aggrieved.
> 177 Colo. at 112, 493 P.2d at 667.

**A misrepresentation, which is a false or misleading statement that induces the recipient to act or refrain from acting, is actionable when it is made "either with knowledge of its untruth, or recklessly and willfully made without regard to its consequences, and with an intent to mislead and deceive the plaintiff."** *Parks v. Bucy,* 72 Colo. 414, 418, 211 P. 638, 639 (1922). *See also Brown v. Linn,* 50 Colo. 443, 448, 115 P. 906, 908 (1911) **("These misrepresentations related to the subject of the transaction, and were of such a character that they would naturally induce [plaintiff] to make the exchange, and were followed by the exchange.");** *People v. Lewis,* 710 P.2d 1110, 1116-17 (Colo.App.1985); *Stalos v. Booras,* 34 Colo.App. 252, 255-56, 528 P.2d 254, 255-56 (1974); Restatement (Second) of Contracts, Introductory Note, Ch. 7 (1979).

**Thus, a party may establish a deceptive trade practice by proof that a defendant knowingly made a misrepresentation that induces a party's action or inaction-that is, section 6-1-105(1)(e)'s requirement for a "false representation."** In *People ex rel. Dunbar,* we additionally reasoned that "it is in the public interest to invoke the state's police power to prevent the use of methods that have a *tendency or capacity to attract customers* through deceptive trade practices." [FN10] 177 Colo. at 113, 493 P.2d at 668 (emphasis added).

> FN10. In reaching this conclusion, we relied upon the following federal cases: *Dr. W.B. Caldwell, Inc. v. F.T.C.,* 111 F.2d 889 (7th Cir.1940); *F.T.C. v. R.F. Keppel and Bros.,* 291 U.S. 304, 54 S.Ct. 423, 78 L.Ed. 814 (1934); *F.T.C. v. Winsted Hosiery*

> *Co.,* 258 U.S. 483, 42 S.Ct. 384, 66 L.Ed. 729 (1922); *Ford Motor Co. v. F.T.C.,* 120 F.2d 175 (6th Cir.1941).

> \*148 **Thus, a plaintiff may satisfy the deceptive trade practices requirement of section 6-1-105(1)(e) by establishing either a misrepresentation or that the false representation had the capacity or tendency to deceive, even if it did not.**

Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc., 62 P.3d 142, 147 - 148 (Colo., 2003)(Emphasis added).

Under the guidance of Rhino Linings USA, Inc., therefore, Defendant's argument must fail. It is notable that Defendant's Motion purposely fails to quote the entire advertised language Defendant used to lure shoppers into its Avanza stores, which is actually "**A Great Way to Save – Plus 10% at the Register**" (*see* Amended Complaint, #3, p. 5, ¶ 30). While Plaintiffs alleged that the deceptive trade practices Defendant engaged in occurred under C.R.S. § 6-1-105(1)(i),(l), and (u), *see* Amended Complaint, #3, pp. 8 – 9, ¶¶ 45(a) – (c), the reasoning employed by the Rhino Linings USA, Inc. Court is no less applicable to those sections than it is to C.R.S. § 6-1-105(1)(e). This is especially true in light of the specific language the Colorado Legislature defined as a deceptive trade practice in C.R.S. § 6-1-105(1)(l): "Makes false *or misleading statements of fact concerning the price of goods, services, or property… .*"

In the instant case, each of the Plaintiffs has alleged that the language contained in **Defendant's** advertising, marketing, and signage (**to wit: "A Great Way to Save – Plus 10% at the Register"**) caused them to reasonably believe that they would be saving an additional 10% on the price of items at the register rather than being charged an additional 10% (*see, e.g.* Amended Complaint, #3, p. 12, ¶ 80; *also,* specific allegations for each

individual Plaintiff alleges the information contained in ¶ 80 through the Amended Complaint). Moreover, each of the Plaintiffs has alleged that they were not aware that they would be charged an additional 10% at the point of purchase (*see* Amended Complaint, #3, p. 12, ¶ 79; *also* specific allegations for each Plaintiff alleges the information contained in ¶ 79). Furthermore, each of the Plaintiffs has alleged that they relied upon the misleading representations of Defendant's advertising, marketing, and signage (**to wit: "A Great Way to Save – Plus 10% at the Register"**), believing that they would be paying 10% less at the register than they actually did, resulting in financial harm to them. *See, e.g.,* Amended Complaint, #3, pp. 15 – 16, ¶¶ 98 – 99; *also*, specific allegations for each Plaintiff alleges the information contained in ¶¶ 98 – 99. Thus, Plaintiffs have pleaded sufficient facts to establish that the "A Great Way to Save – Plus 10% at the Register" was deceptive under C.R.S. § 6-1-105.

Furthermore, Defendant's "susceptible to two meanings" argument must also fail. In Bell Atlantic Corp. v. Twombly, 550 U.S. 544, (U.S. 2007), the United States Supreme Court was considering whether the plaintiff had sufficiently pleaded a claim under § 1 of the Sherman Act. *See* Bell Atlantic Corp., 550 U.S. at 554 – 555. Therein, the plaintiff merely alleged factual allegations of parallel business conduct and naked conclusions of conspiracy with nothing more, specifically factual allegations regarding an unlawful agreement which led to the parallel conduct. *See* id. at 556 – 557. The Bell Atlantic Corp. Court stated:

> In identifying facts that are suggestive enough to render a § 1 conspiracy plausible, we have the benefit **1966 of the prior rulings and considered views of leading commentators, already quoted, that lawful parallel conduct fails to bespeak unlawful agreement. It makes sense to say, therefore, that an allegation of parallel conduct and a bare assertion of conspiracy will not

suffice. **Without *557 more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality. Hence, when allegations of parallel conduct are set out in order to make a § 1 claim, they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action**.

Bell Atlantic Corp., 550 U.S. at 556 – 557.  In other words, the missing factual allegations required in the Bell Atlantic Corp. case necessarily involved factual allegations regarding conduct of the defendant (i.e., an agreement).

The instant case is markedly different from the Bell Atlantic Corp. case, demonstrably so, because in order to prove a deceptive trade practice under C.R.S. § 6-1-105 Plaintiffs need only plead sufficient facts to show that Defendant knowingly made *misleading statements of fact concerning the price of goods* (*see* C.R.S. § 6-1-105(1)(l)), *that had the capacity or tendency to deceive, and that induced action*. *See* Rhino Linings USA, Inc., *supra*.  In other words, as pertinent in this particular instance, Plaintiffs are only required to plead sufficient facts regarding the tendency or capacity of the "A Great Way to Save – Plus 10% at the Register" language *itself* to deceive, not, and distinguishable from the situation in Bell Atlantic Corp., conduct of Defendant.  Plaintiffs have done so.  *See* Amended Complaint, #3, p. 4, ¶ 20; p. 5., ¶¶ 25 – 28, 30; p. 6, ¶ 32;  p. 12, ¶¶ 79 – 80; pp. 15 – 16, ¶¶ 98 – 99; *also*, specific allegations for each Plaintiff alleges the information contained in ¶¶ 98 – 99.

    D.    Class Action Plaintiffs Are Entitled to Actual Damages Under C.R.S. § 6-1-105(2):

Plaintiffs, *as part of a class action*, confess Defendant's Motion *only to the extent that Defendant asserts that Plaintiffs may not recover statutory damages or attorneys' fees for their CCPA claim. See* Defendant's Motion, #14, pp. 9 – 10.   On the other hand, however, Plaintiffs are entitled to recover *actual* damages sustained as a result of the deceptive conduct of Defendant based on their CCPA claim.   The Colorado Court of Appeals has previously considered this exact issue, stating:

> By its plain language, this statute [§ 6-1-113] establishes a defendant's liability in a private civil action for commission of deceptive trade practices and sets forth the damages available to an individual plaintiff. **Contrary to Robinson's assertions, it expressly excludes members of a class from benefitting from damages provided in subparagraphs (2)(a) and (b). Thus, as is relevant here, although an individual plaintiff may be awarded $250 under the provision without proof of actual damages, class action members may not.**
>
> **We observe that, although the statute does not preclude class members from bringing an action for actual damages, Robinson alleged no actual damages in her complaint and her arguments have focused on their entitlement, not to actual damages, but rather to the $250 provided by statute.** Thus, we conclude that the trial court's analysis was correct. *See Cribb v. United Health Clubs Inc.,* 336 Pa.Super. 479, 485 A.2d 1182 (1984) (in a class action it must appear that the relief is beneficial to all class members).

Robinson v. Lynmar Racquet Club, Inc., 851 P.2d 274, 278 (Colo.Ct.App., 1993).   Thus, Plaintiffs in the instant case may claim actual damages for the alleged CCPA violation.   Moreover, Plaintiffs should be allowed to do so.   Plaintiffs generally pleaded the frequency in which they purchased at Defendant's stores during the relevant time period as well as the approximate amounts they spent during that time. *See, e.g.,* Amended Complaint, #3, pp. 11 – 12, ¶¶ 73 – 75.[4]   While Plaintiffs only requested statutory damages in the CCPA

---

[4] Plaintiffs did not specifically plead the amounts Plaintiff Margaret Martinez spent during each shopping trip. *See* Amended Complaint, #3, ¶¶ 73 – 100. Plaintiffs should be allowed

portion of their Amended Complaint (*see* Amended Complaint, #3, p. 11, ¶¶ 68 – 71),

Plaintiffs requested damages to be proven at trial also. *See* Amended Complaint, #3, p.

167. Plaintiffs should be allowed to amend their Amended Complaint to specifically plead

that they request actual damages under their CCPA claim.

## II.   **Plaintiffs' Fraud Claim**

A.   Burden of Proof:  The Plaintiffs admit that they must prove each element of

their fraud claim.

B.   Elements:  The Plaintiff agrees with the Defendants' identification of the

elements of a *prima facie* fraud case.

C.   The Complaint Sufficiently Alleges Factual Allegations With Particularity to

Support the First, Second, and Third Elements of Fraud:

Defendant's Motion asserts that "Plaintiffs' [Amended] Complaint fails to set forth the

circumstances of the alleged fraud with the requisite particularity" and "… Plaintiffs' factual

allegations are insufficient to sustain their fraud claim." *See* Defendant's Motion, #14, p. 11.

Defendants are incorrect.

As noted by the United States Circuit Court of Appeals for the Tenth Circuit:

> This court reviews a district court's Rule 9(b) ruling *de novo* and confines its
> analysis to the text of the complaint. *See Schwartz v. Celestial Seasonings,
> Inc.,* 124 F.3d 1246, 1251 (10th Cir.1997). Rule 9(b) provides, "In all
> averments of fraud or mistake, the circumstances constituting fraud or
> mistake shall be stated with particularity. Malice, intent, knowledge, and other

---

to amend their Complaint to correct this oversight.  On the other hand, Plaintiffs pleaded
amounts for each of the remaining Plaintiffs. *See, e.g.,* Amended Complaint, #3, ¶¶ 101,
110, 119, 128, 137, 146, 155, 164, 173, 182, 191, 200, 209, 218, 227, 236, 245, 254, 263,
272, 281, 290, 299, 308, 317, 326, 335, 344, 353, 362, 371, 380, 389, 398, 407, 416, 425,
434, 443, 452, 461, 470, 479, 488, 497, 506, 515, 524, 533, 542, 551, 560, 569, 578, 587,
596, 605, 614, 623, 632, 641, 650, 659, 668, 677, 686, 694, 703, 712, 721, 730, 739, 748,
757, 762, 771, 780, 789, 798, 807, 816, 825.

conditions of mind of a person may be averred generally." Fed.R.Civ.P. 9(b). **More specifically, this court requires a complaint alleging fraud to "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof."** *Lawrence Nat'l Bank v. Edmonds (In re Edmonds), 924 F.2d 176, 180 (10th Cir.1991).* **Rule 9(b)'s purpose is "to afford defendant fair notice of plaintiff's claims and the factual ground upon which [they] are based...."** *Farlow v. Peat, Marwick, Mitchell & Co., 956 F.2d 982, 987 (10th Cir.1992) (quotation omitted), implied \*1237 overruling on other grounds recognized by, Seolas v. Bilzerian, 951 F.Supp. 978, 981-82 (D.Utah 1997).*

Koch v. Koch Industries, Inc., 203 F.3d 1202, 1236 - 1237 (10th Cir., 2000)(Emphasis added).

> 1. Plaintiffs' Factual Allegations Are Sufficient to Show Defendant Knowingly or Recklessly Made a False Representation of Material Fact

Defendant alleges that Plaintiff has pleaded insufficient facts to establish that Defendant: 1) made a false representation of material fact; and 2) that Defendant knew that representation to be false. Defendant is incorrect on both counts. As recognized by the Colorado Court of Appeals:

> "[A] false representation of a past or present fact is any words or conduct which create[s] an untrue or misleading impression of the actual past or present fact in the mind of another." *Russell v. First Am. Mortgage Co.,* 39 Colo.App. 360, 364, 565 P.2d 972, 975 (1977).

Nelson v. Gas Research Institute, 121 P.3d 340, 343 (Colo.Ct.App., 2005). With respect to whether a future promise can constitute fraud, the Colorado Court of Appeals has stated:

> A promise concerning a future act, when coupled with a present \*256 intention not to fulfill the promise, can be a misrepresentation which is actionable as fraud. Kuhn v. Seaton, 187 Kan. 106, 353 P.2d 959; See Caldwell v. Tilford, 90 Ariz. 202, 367 P.2d 239; Steiger v. Commerce Acceptance, 455 P.2d 81 (Okl.). The trial court was therefore correct in denying the motion to dismiss.

Stalos v. Booras, 528 P.2d 254, 256 (Colo.Ct.App., 1974); *accord* Nelson, 121 P.3d at 343.

The facts pleaded by Plaintiffs in their Amended Complaint are sufficient to establish a false representation of a material fact whether the statement **"A Great Way to Save – Plus 10% at the Register"** is characterized as "a false representation of a present fact creating an untrue or misleading impression of the actual present fact in the mind of another" or the statement is characterized as a promise concerning a future act.

As set forth above, each of the Plaintiffs has alleged that the language contained in **Defendant's** advertising, marketing, and signage (**to wit: "A Great Way to Save – Plus 10% at the Register"**) caused them to reasonably believe that they would be saving an additional 10% on the price of items at the register rather than being charged an additional 10% (*see, e.g.* Amended Complaint, #3, p. 12, ¶ 80; *also*, specific allegations for each Plaintiff alleges the information contained in ¶ 80). Moreover, each of the Plaintiffs has alleged that they were not aware that they would be charged an additional 10% at the point of purchase (*see* Amended Complaint, #3, p. 12, ¶ 79; *also* specific allegations for each Plaintiff alleges the information contained in ¶ 79). Furthermore, each of the Plaintiffs has alleged that they relied upon the misleading representations of Defendant's advertising, marketing, and signage (**to wit: "A Great Way to Save – Plus 10% at the Register"**), believing that they would be paying 10% less at the register than they actually did, resulting in financial harm to them. *See, e.g.,* Amended Complaint, #3, pp. 15 – 16, ¶¶ 98 – 99; *also*, specific allegations for each Plaintiff alleges the information contained in ¶¶ 98 – 99.

Further, if the offending statement is characterized as a future promise, it is clear that, when viewed through the eyes of the Plaintiffs at the time they viewed the deceptive

**"A Great Way to Save – Plus 10% at the Register"** statement, Defendant had no present intention of ultimately providing a 10% reduction at the point of purchase. It must not be forgotten that this was a program intentionally put in place by Defendant. Indeed, as alleged by Plaintiffs in their Amended Complaint, Defendant deceptively advertised the 10% surcharge as "A Great Way to Save – Plus 10% at the Register" (*see* Amended Complaint, #3, p. 5, ¶ 30), and that this deceptive advertising was in effect from late June of 2008 through at least March of 2009 (*see* Amended Complaint, #3, p. 5, ¶ 28). Plaintiffs have pleaded that ultimately Defendant did not charge its Avanza customers the prices shown on its shelves and in its sales materials/brochures as Avanza added 10% to the stated or advertised cost of its grocery items at the point of purchase. *See* Amended Complaint, #3, p. 5, ¶ 27. Should there be any doubt whatsoever about whether Defendant knew at the time it made the "Great Way to Save – Plus 10% at the Register" statement that it would not be discounting an additional 10% at the register, the Court should note that Defendant has already admitted liability and agreed to entry of judgment in favor of six other plaintiffs in Colorado state court for this very program. *See* Amended Complaint, #3, p. 6, ¶ 33.

2. Plaintiffs' Factual Allegations Are Sufficient to Show Plaintiffs Were Ignorant of the Falsity

Each of the Plaintiffs has alleged that the language contained in **Defendant's** advertising, marketing, and signage (**to wit: "A Great Way to Save – Plus 10% at the Register"**) caused them to reasonably believe that they would be saving an additional 10% on the price of items at the register rather than being charged an additional 10% (*see, e.g.* Amended Complaint, #3, p. 12, ¶ 80; *also*, specific allegations for each Plaintiff alleges the

information contained in ¶ 80). Defendant's Motion, however, relies upon Sheffield Servs. Co. v. Trowbridge, 211 P.3d 714 (Colo.Ct.App., 2009), for the proposition that Plaintiffs could not have plausibly relied upon the "A Great Way to Save – Plus 10% at the Register" language utilized by Defendant because the means of knowledge and the subject matter were available to both parties and available for inspection. The factual disparity between the Sheffield Servs. Co. case and the instant case are so vast as to make application of the rule espoused therein inapposite in the instant case.

First, the Sheffield Servs. Co. case involved a single transaction (purchase of real estate lots) between sophisticated parties. See Sheffield Servs. Co., 211 P.3d at 717. Second, prior to closing on the purchase and sale contracts, the plaintiff (Sheffield) was aware that certain landscaping and infrastructure improvements had not been made on the lots. See id. Third, additionally, prior to the closing, the defendant (Trowbridge) had knowledge (via letter from the County of Broomfield) that the County of Broomfield would withhold building permits on the subject lots if the improvements were not made. See id. Fourth, Trowbridge did not disclose this information to Sheffield and the closing occurred. See id. Fifth, after the closing, Sheffield learned of the County of Broomfield letter and brought, in relevant part, a claim against Trowbridge for nondisclosure/negligent misrepresentation. On appeal, the Colorado Court of Appeals upheld the dismissal of the nondisclosure/negligent misrepresentation claim against Trowbridge. See id. at 724. In doing so, the Sheffield Servs. Co. Court found that the record showed that Sheffield knew specific facts that should have aroused its suspicion and prompted it to conduct a reasonably diligent inquiry into the completion of the improvements prior to the closing

date, that in a negligent misrepresentation claim a contracting party's sophistication was relevant to determining whether a reasonable person in that party's position would have diligently investigated the transaction's subject matter prior to closing, that the information regarding the completion of the improvements was equally available to Sheffield prior to the closing, and that Sheffield had a reasonable time to investigate pre-closing. *See* id. at 725.

In the instant case, there is no reason to believe that any of the Plaintiffs had facts to make them *suspicious* of the "A Great Way to Save – Plus 10% at the Register" language prior to actual completion of the sale.  Indeed a reasonable reading of the foregoing would lead a shopper to believe that there would be a further 10% reduction at the register. *See* Amended Complaint, #3, p. 6, ¶ 32, 33; pp. 14 – 15, ¶¶ 93, 94; *also* - specific allegations for each Plaintiff alleges the same information.  Moreover, no one would reasonably suggest that grocery store shoppers, in general, especially targeted Hispanic shoppers, are necessarily more or less sophisticated than anyone else. *See* Amended Complaint, #3, p. 4, ¶ 22.  Furthermore, with no reasonable basis for suspicion of the "Great Way to Save" statement, Plaintiffs thus did not have a reasonable opportunity to obtain the true facts regarding Defendant's pricing scheme *prior the actual completion of the sale* – and even then, discovery would occur *only if* Plaintiffs got a receipt, examined same, and pulled out a calculator to add up the individual items on the receipt.  Grocery shopping is an everyday ordinary event for millions of people:  an event where any number of people purchase any number of items and do not necessarily receive receipts, keep receipts, or even look at receipts at the point of purchase.

To the extent that the Court should find Plaintiffs' factual matter is insufficient or not pleaded with sufficient particularity, Plaintiffs should be allowed to amend their Amended Complaint to address any perceived shortfalls.

### III. Plaintiffs' Civil Theft Claim

A.   <u>Burden of Proof</u>:  The Plaintiffs admit that they must prove each element of their civil theft claim.

B.   <u>Elements</u>:  The Plaintiff agrees with the Defendants' identification of the elements of a *prima facie* civil theft case.  Plaintiffs also agree that Colorado's two-year statute of limitations found at C.R.S. § 13-80-102(1)(a) applies to the action established in C.R.S. § 18-4-405.  Plaintiffs disagree, however, that Plaintiffs failed to plead their civil theft claim within the applicable statute of limitations.

C.   <u>The Complaint Sufficiently Alleges that Plaintiffs Pleaded Their Civil Theft Claim Within the Applicable Statute of Limitations</u>:

Defendant argues that Plaintiffs' Civil Theft claim must be dismissed as same accrued at the latest on April 1, 2009 but was pleaded outside the statute of limitations in June 2010.  *See* Defendant's Motion, #14, pp. 13 - 16.  Under C.R.S. § 13-80-108, accrual is determined as:

> (1) Except as provided in subsection (12) of this section, a cause of action for injury to person, property, reputation, possession, relationship, or status shall be **considered to accrue on the date both the injury and its cause are known or should have been known by the exercise of reasonable diligence**.
>
> …
>
> (3) A cause of action for fraud, misrepresentation, concealment, or deceit shall be considered to accrue on the date such fraud, misrepresentation,

concealment, or deceit **is discovered or should have been discovered by the exercise of reasonable diligence**.

…

(8) A cause of action for losses or damages not otherwise enumerated in this article shall be deemed to accrue **when the injury, loss, damage, or conduct giving rise to the cause of action is discovered or should have been discovered by the exercise of reasonable diligence**.

C.R.S.A. § 13-80-108(1),(3),(8) (Emphasis added).

Defendant's Motion rightfully recognizes that Plaintiffs are claiming that Defendant committed theft by deception against them. *See* Defendant's Motion, #14, p. 14.  As recognized by the United States District Court for the District of Colorado:

> **"At the motion-to-dismiss stage, a complaint may be dismissed on the basis of a statute of limitations defense only if it appears beyond a doubt that Plaintiffs can prove no set of facts that toll the statute."** *Tello v. Dean Witter Reynolds, Inc.,* 410 F.3d 1275, 1288 n. 13 (11th Cir.2005) (internal quotation marks and citations omitted). *See also United States v. Lewis,* 411 F.3d 838, 842 (7th Cir.2005) (complaint may be dismissed where the "allegations of the complaint itself **set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely under the governing statute of limitations**") (citation omitted).

Whitington v. Sokol, 491 F.Supp.2d 1012, 1018 (D.Colo., 2007)(Emphasis added).  The guidance of the Whitington Court makes perfect sense when viewed in terms of guidance from the Tenth Circuit Adlrich Court (relied upon by Defendant, *see* Defendant's Motion, #14, pp. 13 – 14):

> **This court and others have held that while state statutes of limitations apply, tolling is a matter of federal law.** See, e.g., Esplin v. Hirschi, 402 F.2d 94, 103 (10th Cir. 1968), cert. denied, 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969); Janigan v. Taylor, 344 F.2d 781, 784 (1st Cir.), cert. denied, 382 U.S. 879, 86 S.Ct. 163, 15 L.Ed.2d 120 (1965). See also 1 A. Bromberg & L. Lowenfels, Securities Fraud & Commodities Fraud s 2.5(1), at 42 (1979). For reasons equally applicable to implied securities fraud actions, the Supreme Court has recently held that coordinate state tolling rules apply

24

along with state statutes of limitations in suits brought under 42 U.S.C. s 1983. Board of Regents v. Tomanio, --U.S. --, -- - --, 100 S.Ct. 1790, 1794-96, 64 L.Ed.2d 440 (1980). We need not decide whether Board of Regents alters the law in securities fraud cases as well, because the state and federal tolling rules here coincide. **Under both Colorado and federal law, the limitations period begins to run when the aggrieved party discovers, or should have discovered by the exercise of reasonable diligence, the facts constituting the fraud.** Compare Holmberg v. Armbrecht, 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946); Bailey v. Glover, 88 U.S. (21 Wall.) 342, 347, 22 L.Ed. 636 (1875); de Haas v. Empire Petroleum Co., 435 F.2d 1223, 1225-26 (10 Cir. 1970) with Wright v. Nelson, 125 Colo. 217, 242 P.2d 243, 247-48 (1952); Pipe v. Smith, 5 Colo. 146 (1879); Colo.Rev.Stat. s 13-80-109 (1973).

Aldrich v. McCulloch Properties, Inc., 627 F.2d 1036, 1041 (10th Cir., 1980)(Emphasis

added).   The Aldrich Court further noted:

> **The question of whether a plaintiff should have discovered the basis of his suit under the doctrine of equitable tolling does not lend itself to determination as a matter of law.** See Dzenits v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 494 F.2d 168, 172-73 (10th Cir. 1974); de Haas v. Empire Petroleum Co., 435 F.2d 1223, 1226 (10th Cir. 1970); 6 L. Loss, Securities Regulation 3905 (2d ed. Supp. 1969); 10 C. Wright & A. Miller, Federal Practice & Procedure s 2734, at 651 (1973).

Aldrich, 627 F.2d at 1042.

In the instant case, Plaintiffs' Civil Theft claims only accrued when Plaintiffs discovered, or should have discovered by the exercise of reasonable diligence, the facts constituting civil theft by Defendant.   Defendant erroneously attempts to place knowledge on the part of Plaintiff Martinez onto the other Plaintiffs in the class.   See Defendant's Motion, #14, p. 15.   In other words, Defendant asserts that since Plaintiff Martinez looked at her receipt in January 2009 and discovered the 10% markup the other Plaintiffs could have done same, see id., and thus the filing of Plaintiffs' original complaint in June 2010 (in Colorado state court) is de facto time-barred.   This argument must be rejected as applied

to all Plaintiffs.  First, while Plaintiff Martinez's civil theft claim *might* arguably be time-barred as pleaded, no other Plaintiff besides Plaintiff Martinez pleaded facts regarding when he or she knew or should have discovered the 10% markup.  Second, Defendant's argument implicitly (and wrongfully) assumes that *all* of the other Plaintiffs actually received receipts from Defendant when they purchased at Avanza.  Third, Defendant's argument implicitly (and wrongfully) assumes that even if the other Plaintiffs received receipts, they knew, or were able to discover from the receipts, the 10% markup.

As such, while Defendant's Motion might be correct that the statute of limitations ran on Plaintiff Martinez's civil theft claim before the filing of Plaintiffs' original lawsuit in June 2010, Defendant's Motion should be denied as to statute of limitations with respect to the remaining Plaintiffs.  As noted by the Whitington Court, *supra*, at the motion to dismiss stage a complaint should be dismissed on statute of limitations grounds "only if it appears beyond a doubt that Plaintiffs can prove no set of facts that toll the statute." *See* Whitington, 491 F.Supp.2d at 1018.  As shown by the logical fallacies inherent in Defendant's argument, *supra*, Defendant's Motion does not show beyond a doubt that the other Plaintiffs cannot prove a set of facts that show the statute was tolled.  At the very least, Plaintiffs should be allowed to amend their Complaint with respect to their Civil Theft claim to plead facts with regard to the statute of limitations. *See, e.g.,* Wilson v. City of Aurora, Colorado, 2010 WL 3522565, 4 (D.Colo., 2010)(*Magistrate Boland allowed plaintiff to amend his complaint to clarify facts pertaining to statute of limitations and defendants' dispositive motions denied without prejudice*).

D.      The Complaint Sufficiently Alleges the Elements of Civil Theft:

Defendant alleges that Plaintiffs fail to allege facts establishing that Defendant committed criminal theft, a required element of civil theft (citing *Itin v. Unger, 17 P.3d 129, 134 (Colo., 2000). See* Defendant's Motion, #14, p. 16.   In Itin, the Colorado Supreme Court stated:

> As discussed, placement within the Criminal Code requires that the owner of the property must prove that the taker or the defendant committed *acts* constituting at least one of the statutory crimes. With respect to the crime of theft claimed here, all of its statutory elements must be proved, including the two culpable mental states: (1) that the defendant knowingly obtained control over the owner's property without authorization and (2) that he or she did so with the specific intent to permanently deprive the owner of the benefit of property. *See* § 18-4-401(1). Only upon proof of the criminal act of theft may the owner recover treble damages, fees, and costs.

Itin v. Ungar, 17 P.3d 129, 134 (Colo., 2000).  Colorado Revised Statute Section 18-4-401 states, in relevant part:

> (1) A person commits theft when he knowingly obtains or exercises control over anything of value of another without authorization, or by threat or deception, and:
>
> (a) Intends to deprive the other person permanently of the use or benefit of the thing of value; or
>
> (b) Knowingly uses, conceals, or abandons the thing of value in such manner as to deprive the other person permanently of its use or benefit; or
>
> …
>
> (1.5) For the purposes of this section, a thing of value is that of "another" if anyone other than the defendant has a possessory or proprietary interest therein.

C.R.S.A. § 18-4-401.

In the instant case, Plaintiffs have pleaded sufficient facts to establish that Plaintiffs have stated a plausible claim for relief.  Plaintiffs have alleged that Defendant placed

pricing signs on its store shelves which purported to state the prices of various items. *See* Amended Complaint, #3, p. 5, ¶ 26. Plaintiffs have alleged that Defendant did not charge its customers the prices shown on the shelves or its sales materials/brochures but rather added 10% to the stated or advertised cost of its grocery items at the point of purchase. *See* id., p. 5, ¶ 27. Plaintiffs have alleged that Defendant's advertisements, displays, and sales materials utilized the language "A Great Way to Save – Plus 10% at the Register", which led customers, including the Plaintiffs, to reasonably believe that they were receiving 10% additional savings or discount at the point of purchase rather than a 10% additional charge. *See* id., p. 5, ¶ 30. Plaintiffs have alleged that the marketing techniques employed by Defendant during the shelf-plus 10% campaign confused and tricked shoppers, including the Plaintiffs, into thinking that they were paying a lower price for grocery items than was true. *See* id., p. 6, ¶ 32.

Thus, Plaintiffs have pleaded facts to establish that Defendant knowingly obtained money (a thing of value pursuant to C.R.S. § 18-4-401(1.5)) – indeed, the 10% surcharge at the register was no accident: Defendant intentionally came up with the marketing plan utilizing the shelf-plus 10% pricing program and intentionally added the 10% surcharge at the point of purchase – from Plaintiffs by deception and the nature of the transaction (payment for grocery purchases) indicates that Defendant intended to permanently deprive Plaintiffs of the money paid. Defendant's argument that Plaintiffs cannot be liable for civil theft where Plaintiffs actually received the groceries (*see* Defendant's Motion, #14, p. 17) simply misses the point because the receipt of the groceries is irrelevant. The problem for Defendant is that deception is deception, regardless of the manner in which the deception

is carried out.  If Defendant obtained control over money of the Plaintiffs by deception with the intent to permanently deprive Plaintiffs of it, civil theft has occurred.  Accepting the facts pleaded by Plaintiffs as true, Plaintiffs have pleaded such a plausible claim.

## CONCLUSION

WHEREFORE, Plaintiff respectfully requests that this Court deny Defendant Nash Finch Company's September 7, 2011 Motion To Dismiss Plaintiffs' Amended Class Action Complaint And Jury Demand (#14).

Respectfully submitted this 28th day of October, 2011.

S/ J. Kyle Bachus
J. Kyle Bachus, Esq.  Colo. Reg. No. 24441
BACHUS & SCHANKER, LLC
1899 Wynkoop Street, Suite 700
Denver, Colorado 80202
(303)893-9800
(303)893-9900 [Fax]
Email:  kbachus@coloradolaw.net
Attorneys for Plaintiffs

S/ Marc P. Harden
Marc P. Harden, Esq.  Colo. Reg. No. 36812
BACHUS & SCHANKER, LLC
1899 Wynkoop Street, Suite 700
Denver, Colorado 80202
(303)893-9800
(303)893-9900 [Fax]
Email:  mharden@coloradolaw.net
Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of October, 2011, a true and correct copy of the foregoing Plaintiffs' Response To Defendant Nash Finch Company's September 7, 2011 Motion To Dismiss Plaintiffs' Amended Class Action Complaint And Jury Demand (#14) was served on Defendant Nash Finch Company via ECF/Pacer:

Scott S. Barker, Esq.
Theresa R. Wardon, Esq.
Wheeler Trigg O'Donnell LLP
1801 California Street, Suite 3600
Denver, CO  80202
Telephone:   (303) 244-1800
Facsimile:   (303) 244-1879
Email:       barker@wtotrial.com
             wardon@wtotrial.com
*Attorneys for Defendant Nash Finch
Company d/b/a Avanza Supermarket*

*S/Courtney Clark*
Litigation Paralegal