**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger**

**Civil Action No. 11-cv-02092-MSK-KLM**

**MARGARET MARTINEZ;
MARIA ELENA CASTONON;
JORGE DOMINGUEZ RAMIREZ;
CAROLINA CRUZ;
MARIA BERENICE CRUZ RAMOS;
ROSA BAUTISTA;
PEDRO ROMAN;
TEODORO RUEDA;
MARTHA GARCIA;
ADELIA VALDEZ;
GENOVEVA RODRIGUEZ;
MARIA DURAN;
REFUGIO DE LA CRUZ;
JUAN RODRIGUEZ;
EVA DE LA CRUZ;
BARBARA JOJOLA;
LETICIA SILVA;
RAFAEL CASTANEDA;
MARIA CHAVEZ EGUIA;
JUANA MARTINEZ;
ALFREDO LEDEZMA;
JOSE ESPITIA, JR.;
RAYMOND VALDEZ;
JORGE TERRAZA MONTOYA;
MARICA LARIZ;
PRUDENCIA DE LA ROSA;
MARIA NIEBLAS;
JOSE ARRENDONDO;
MARIA VALASQUEZ;
CARMEN BERMUDEZ;
PATRICIA CASTANEDA;
JOSE JUAN RAMIREZ;
MARIA TRINIDAD OSORIO;
TINA MONTEZ;
DORA LIZ CRUZ;
MAYRA CARMONA;
LETICIA JIMINEZ;
MAURICIO CACCIA;**

**RITA ORALIA SIERRO;**
**LORENZO POSADA;**
**MARIA MONTOYA;**
**MARISELA SAYAGO;**
**MIGUEL TOLEDO;**
**ROCIO AGUILERA;**
**MARIA RAMIREZ;**
**OSCAR PEREZ;**
**JUVENAL TORRES;**
**CONSUELO TORRES;**
**HILDA CORDIAL;**
**NANCY CRUZ RAMOS;**
**ESPERANZA RAMOS PADILLA;**
**TANIA ANDRADE REYES;**
**HERIBERTO MARTINEZ;**
**CYNTHIA MARTINEZ;**
**TANIA MARTINEZ;**
**SERGIO SOSA, JR.;**
**FELIPE CERVANTES;**
**SUSANA ORELLANA;**
**IRMA SKINNER;**
**LUIS GARCIA;**
**ROSA BOTELLO;**
**MARIA DEL CARMEN CONTRERAS;**
**GLORIA FERNANDEZ;**
**JAVIER HERNANDEZ;**
**LIDIA JAIME CARDENA;**
**MARIA DEL CARMEN SALAZAR;**
**ESMERALDA OSEGUERA MARTINEZ;**
**REYNA MORALES;**
**ANA MELGAR;**
**GUSTAVO JACO;**
**MARIA DE JACO;**
**MARIO MOLINA;**
**MARCO CHAVEZ;**
**YANIRA JACO;**
**ANGEL BANUELOS;**
**CESAR YANEZ;**
**MARISELA ROMERO;**
**CLAUDIA JAVIER;**
**MAGDALENA GARCIA;**
**ROSAURA L DE MERAZ;**
**JUAN CARLOS ARRENDONDO;**
**RAMON HOLGUIN; and**

**JOSE LUIS SANCHEZ, on behalf of themselves and all others similarly situated,**

    **Plaintiffs,**

**v.**

**NASH FINCH COMPANY, d/b/a Avanza Supermarket,**

    **Defendant.**

___

**OPINION AND ORDER GRANTING, IN PART, MOTION TO DISMISS**
___

**THIS MATTER** comes before the Court pursuant to the Defendant's ("Avanza") Motion to Dismiss **(# 14)**, the Plaintiffs' response **(# 17)**, and Avanza's reply **(# 20)**.

## FACTS

Although lengthy , the Plaintiffs' Amended Complaint **(# 3)** describes a straightforward factual scenario. During 2008 and 2009, Avanza operated several grocery stores. Prices for goods were posted on the goods, on store shelves or in various published advertisements. Some promotional materials, stated: "A great way to save - plus 10% at the register!"[1]

The Plaintiffs, all customers of Avanza, allege that they understood the promotional language to mean that the posted price would be reduced by 10% at the register, resulting in a 10% savings. The reality, however, was precisely the opposite - at the register, the posted or advertised price was increased by 10%. The Plaintiffs contend that they were misled by Avanza's representations, and, as a result, overpaid for the goods that they purchased from Avanza.

---

[1] An exhibit reflecting this language also contains what appears to be a similar statement in Spanish. Neither party has purported to provide the Court with a translation of the Spanish text, and thus, the Court does not consider the Spanish component in its analysis.

The Plaintiffs assert three claims: (i) violation of the Colorado Consumer Protection Act ("CCPA"), C.R.S. § 6-1-101 *et seq.*, in that Avanza's representation was deceptive and misleading as to the prices of its goods; (ii) common-law fraud, apparently under Colorado law, on the same basis as claim one[2]; and (iii) civil theft under C.R.S. § 18-4-405, in that Avanza "obtained money from the plaintiffs by deception".

Avanza moves **(# 14)** to dismiss the claims against it, arguing: (i) as to the CCPA claim, the Plaintiffs have failed to plead fraud with the particularity required by Fed. R. Civ. P. 9(b), have failed to plead facts showing any statement that could be construed as fraudulent, and in any event, the remedies provided by C.R.S. § 6-1-113(2) are expressly unavailable in a class action (which the Plaintiffs purport to bring here)[3]; (ii) as to the common-law fraud claim, the Plaintiffs have failed to plead facts showing a misleading statement, Avanza's knowledge of the statement's misleading character, and the Plaintiffs' own reliance on the statement; and (iii) as to the civil theft claim, that the Plaintiffs' claims are untimely and that the Plaintiffs fail to adequately plead facts showing a civil theft.

## ANALYSIS

### A. Standard of review

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-plead allegations in the Complaint as true and view those allegations in the light most favorable to the nonmoving party. *Stidham v. Peace Officer Standards and Training*, 265 F.3d

---

[2]Claim two is also susceptible to a reading that it is asserting a statutory claim for false advertising under C.R.S. § 18-5-301 and -303.

[3]The Court notes that the Plaintiffs have recently moved for class certification **(# 49)**. That motion is not yet at issue.

1144, 1149 (10th Cir. 2001), *quoting Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). With regard to what must be pled to avoid dismissal, the Supreme Court in *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009), described the standard that must be met as "facial plausibility."  In this context, "plausibility" refers to the scope and degree of specificity of the allegations in the complaint. *Khalik v. United Air Lines*, ___ F.3d ___, 2012 WL 364058 (10th Cir. Feb. 6, 2012).  Although Fed. R. Civ. P. 8(a)(2) still requires the pleader to supply only "a short and plain statement of the claim," that statement must provide more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or generalized allegations of conduct that "encompass a wide swath of conduct, much of it innocent."  *Id.*   In this regard, the plaintiff must do more than articulate a set of facts that could "conceivabl[y]" or "possibly" give rise to a claim; he must "nudge[ ] his claims across the line from conceivable to plausible."  *Id.*  Of course, the degree of specificity that will be required will necessarily vary based on the context of the case.  *Id.*

### B. CCPA claim

#### a. Particularity in pleading

The CCPA prohibits a wide variety of "deceptive trade practices," including "mak[ing] false or misleading statements of fact concerning the price of goods" and "advertisi[ing] good . . . with intent not to sell them as advertised."  C.R.S. § 6-1-105(1)(*i*), (*l*).  To adequately plead a CCPA claim, the Plaintiffs must allege: (i) that Avanza engaged in a practice deemed deceptive under the statute; (ii) that the practice occurred in the course of Avanza's business; (iii) that the practice significantly impacts the public as actual or potential consumers of Avanza's goods; (iv) that the Plaintiffs suffered an injury in fact; and (v) that the deceptive trade practice was the

cause of that injury.  *HealthONE of Denver, Inc. v. United Health Group, Inc.*, 805 F.Supp.2d 1115, 1120 (D. Colo. 2011).

Where the alleged deceptive trade practice sounds in fraud, allegations as to fraudulent statements must be pled with particularity, as required by Fed. R. Civ. P. 9(b).  *Id.* at 1120-21.  Typically, to satisfy Rule 9(b), the Plaintiffs must "set forth the time, place and contents of the false representation, the identity of the party making the false statements, and the consequences thereof."  *Id*. at 1121, *quoting Koch v. Koch Industries, Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000).  The particularity requirement is designed to afford a defendant "fair notice of the plaintiff's claims and the factual ground upon which they are based."  *Id.*  At the same time, Rule 9(b) must be read in conjunction with the requirements of Fed. R. Civ. P. 8, which calls for simple and concise pleading.  *Id.*

Avanza contends that the Plaintiffs have not pled the CCPA claim with the degree of particularity required by Rule 9(b), insofar as they do not identify the time, place, and contents of paticular advertisements and promotional materials that misrepresent the "plus 10%" policy.  This argument is without merit.

First, the Court reads the Amended Complaint to allege that Avanza engaged in deception through both misleading affirmative representations and omissions.  As to omissions, the Court understands the Plaintiffs to allege that although Avanza advertised and displayed prices for various products, it failed to meaningfully disclose the fact that those prices would be increased at the register.  Although Rule 9(b)'s requirement of particularity in pleadings applies to claims of fraudulent omission, that standard is modified somewhat.  *S.E.C. v. Nacchio*, 438 F.Supp.2d 1266, 1277 (D. Colo. 2006).  For claims premised on omissions, the Plaintiffs must

sufficiently identify "the particular information that should have been disclosed, the reason the information should have been disclosed, the person who should have disclosed it, and the approximate time or circumstances in which the information should have been disclosed." *Id.*

The Court finds that the Amended Complaint, and the reasonable inferences that can be drawn therefrom, satisfy this standard. The information that the Plaintiffs allege should have been disclosed (but was not) was that posted or advertised prices would be increased by 10% at the register. In the absence of any affirmative representation, the failure to correctly state the price or disclose that it will be increased is a material omission. The Plaintiffs allege that this was a business practice applied to their purchases. As to CCPA claims premised on deceptive omissions by Avanza, the Court finds that the Amended Complaint satisfies Rule 9(b)'s particularity requirement.

The Plaintiffs also allege that Avanza made affirmative misrepresentations in advertising materials that state: "A great way to save - plus 10% at the register!" These allegations satisfy Rule 9(b)'s requirement that the Plaintiffs identify the false statement with particularity. The Plaintiffs also adequately allege the consequences of that statement, contending that it caused customers to "believe that they were receiving 10% additional savings or discount at the point of purchase rather than 10% additional charge."

Admittedly, the Amended Complaint does not identify the time and place of every advertisement that included the pertinent language, but under the circumstances, the failure to allege such matters does not deprive Avanza of meaningful notice of the grounds upon which the Plaintiffs' claim is made. The Plaintiffs appear to contend that the "great way to save - plus 10%" language was commonly used by Avanza, appearing in "advertisements, displays, and

7

sales materials," suggesting that Avanza made repeated and systematic use of the misleading language.  Presumably, Avanza itself is aware of the contents of its own advertising materials, and thus, can readily ascertain when and where it used the "great way to save - plus 10%" language, or, at the very least, can clarify the matter via discovery.  Thus, under the circumstances, the Court finds that the Plaintiffs have pled their claims of deception under the CCPA with sufficient specificity to satisfy Rule 9(b).

### b.  Deceptive language

Next, the Court turns to Avanza's argument that the express statement identified by the Plaintiffs – the "great way to save - plus 10%" language – is not deceptive as a matter of law. Avanza argues that the statement is not literally false, and that to the extent it is susceptible to multiple interpretations, at least one of those interpretations is not misleading.  Thus, Avanza argues that the Plaintiffs' claims do not rise to *Iqbal*'s "plausibility" standard.

The Court rejects both arguments.  A natural and plausible reading of the "great way to save - plus 10%" language is the interpretation offered by the Plaintiffs: that Avanza was promising an additional 10% savings that would be applied at the time of checkout.  The close linguistic proximity of the word "save" and the "plus 10%" suggests that the concepts of "sav[ing]" and "plus 10%" are related.  In addition,  the Plaintiffs' understanding that an additional discount would be offered at the time of checkout is consistent with general retail practice.   Most consumers have encountered sales in which a discount is promoted along with the advisement of "discount taken at register".  It is far less common that a retailer that displays items with conspicuous price tags systematically charges a higher price for those items at the register. Finding that the Plaintiffs' understanding of the language  "great way to save - plus

10%" is plausible satisfies *Iqbal* and is sufficient to create a legal and factual issue as to whether such language is deceptive.[4]

### c. No Statutory remedy

Finally, Avanza argues that the CCPA does by a class of plaintiffs.[5] C.R.S. § 6-1-113(1)(a) provides for "a civil action for any claim against any person who has engaged in . . . any deceptive trade practice" by an "actual or potential consumer of the defendant's goods." The statute also provides that "**Except in a class action**, . . . any person who, in a private civil action, is found to have [violated the CCPA] shall be liable in an amount equal to the sum of" actual damages (or statutory damages of $500, or trebled damages in certain circumstances) plus costs and attorney's fees. C.R.S. § 6-1-113(2). The Plaintiffs concede that the "except in a class action" language operates to preclude them from recovering statutory or trebled damages or attorney's fees, but contend that cases such as *Robinson v. Lynmar Racquet Club, Inc.*, 851 P.2d 274, 278 (Colo. App. 1993), permit class actions to recover actual damages sustained by class members. Avanza argues that the "except in a class action" language operates to preclude recovery of any monetary damages, actual or otherwise.

On this issue, Avanza has the stronger argument. When interpreting a statute, the Court begins by examining its plain language, and if the statutory language is clear, the Court's

---

[4]This Court is not persuaded by the reasoning of the United States District Court for the District of Minnesota in *Salinas v. Nash Finch Co.*, D. Minn. Case no. 09-172 (Jul. 1, 2009), granting Avanza's motion to dismiss in a similar case. Notably, the transcript of the court's oral ruling (attached to Avanaza's motion here) makes no mention of the juxtaposition of the "great way to save" and "plus 10%" language; the transcript mentions only advertising language consisting of "plus 10% at the register."

[5]For purposes of analysis, the Court begins with the assumption that a class will be certified.

analysis

is at an end. *Russell v. U.S.*, 551 F.3d 1174, 1178 (10th Cir. 2008). Moreover, where a statute provides for (or, here, excludes) a particular remedy, the Court must be leery of reading other remedies into the statutory scheme. *Id.*

Here, C.R.S. § 6-1-113(1) makes a private cause of action available under the CCPA, and contains no text limiting the ability of a plaintiff class to bring such a claim. However, when identifying the remedies available in a private action – actual damages, statutory damages, trebled damages, and attorney's fees and costs – § 6-1-113(2) expressly provides that the remedies are not available to a plaintiff class.

The Plaintiffs appear to concede that § 6-1-113(2) operates to preclude statutory and treble damages and attorney's fees in class actions, but argue that actual damages nevertheless remain available. The relevant statutory text reads as follows:

> (2) Except in a class action . . ., any person who, in a private civil action, [is found liable] shall be liable in an amount equal to the sum of:
>
>> (a) the greater of:
>>
>>> (I) the amount of actual damages sustained;
>>>
>>> (II) five hundred dollars; or
>>>
>>> (III) Three times the amount of actual damages sustained [in cases of bad faith conduct]; plus
>>
>> (b) . . . the costs of the action together with reasonable attorney's fees.

C.R.S. § 6-1-113(2). All of the remedies authorized by subsection (2) are subject to the

exclusion for class actions. Thus, **all** of the remedies found in subsection (2)(a)(I)-(III) (as well as those in subsection (b)) are unavailable in a private class action. The Plaintiffs offer no tenable argument by which the Court can conclude that statutory damages or treble damages under subsection (2)(a)(II) and (III) are somehow subject to the exclusionary language, but that actual damages under subsection (2)(a)(I) are not. The plain and unambiguous language of the statute compels the conclusion that all of the remedies in subparts (a)(I)-(III) and (b), including actual damages, are not available to classes.

The Plaintiffs rely on *Robinson v. Lynmar Racquet Club, Inc.*, 851 P.2d 274, 278 (Colo. App. 1993), for the proposition that actual damages are recoverable in class actions. In *Robinson*, a disgruntled health club customer brought a CCPA claim against the club and sought leave to pursue that claim on behalf of a class. The trial court denied class certification, apparently on the grounds that § 6-1-113(2) precluded any class remedies. The trial court then concluded that the plaintiff had proven her individual CCPA claim and awarded her statutory damages. On appeal, the plaintiff argued that the "trial court erroneously interpreted the damages provision of the CCPA to exclude members of a class from entitlement to certain statutory damages," but the Court of Appeals disagreed. *Id.* at 277. *Robinson* concerned a prior version of § 6-1-113(2), that provided:

> (2) Except in a class action, . . . [a defendant shall] be liable in an amount equal to the sum of:
>
> > (a) Three times the amount of actual damages sustained or two hundred fifty dollars, whichever is greater; and
> >
> > (b) [costs and attorney's fees].

851 P.2d at 278. The Court of Appeals explained that:

11

> By its plain language, this statute establishes a defendant's liability in a private civil action . . . and sets forth the damages available to an individual plaintiff. Contrary to Robinson's assertions, it expressly excludes members of a class from benefitting from damages provided in subparagraphs 2(a) and (b). Thus, as is relevant here, although an individual plaintiff may be awarded $250 under the provision without proof of actual damages, class action members may not.

*Id.* The Court went on to note that "although the statute does not preclude class members from bringing an action for actual damages, Robinson alleged no actual damages in her complaint and her arguments have focused on their entitlement, not to actual damages, but rather to the $250 provided by statute." *Id.*

Because this Court is asked to apply Colorado law, it defers to *Robinson* insofar as it determined that the remedies provided in subsections 2(a) and (b) of the version of § 6-1-113 then in effect were unavailable to class members. That conclusion finds its support in the unambiguous statutory text. *Robinson's* pronouncement that "the statute does not preclude class members from bringing an action for actual damages" was *dicta*[6], and therefore is not instructive on this issue. Indeed, this statement is impossible to reconcile with the court's actual holding that the $250 statutory damages of the then-§ 6-1-113(2)(a) were unavailable to class members, given that (trebled) actual damages were listed in the same statutory provision that the court concluded did not apply to a class. Accordingly, this Court is unpersuaded that *Robinson* stands for the proposition that a class of plaintiffs can obtain an award of actual damages under § 6-1-113.

---

[6]As the court noted, "Robinson alleged no actual damages in her complaint," and thus, the question of whether class members could recover actual damages was not a question before the court. It was also unconnected to the statutory language, insofar as the court offered no statutory citation or source of authority for its belief that class members could nevertheless obtain actual damages under § 6-1-113(2).

12

Turning to the statutory language, the parties focus their arguments on the type of remedy provided in § 6-1-113(2). However, the language of § 6-1-113(2) is not limited to the articulation of remedies; indeed, it defines a defendant's liability under the CCPA in a private action. It limits such liability to specified remedies, and expressly states that such remedies are not applicable in class actions. By logical extension, the CCPA creates no statutory liability for a defendant in a private class action.[7]

At this juncture, each plaintiff is pursuing his or her own rights and no class certification has been sought. In such context, the full panoply of CCPA remedies (and full scope of liability) appears to be at issue. Accordingly, the Court denies Avanza's motion to dismiss the CCPA claims as currently pled.

### C. Common-law fraud

To plead a claim for common-law fraud under Colorado law, the Plaintiffs must allege facts showing: (i) Avanza made a false representation of fact or an omission of a material fact; (ii) that the representation or omission was made to induce the Plaintiffs to act; (iii) the Plaintiffs acted to their detriment; and (iv) they did so in reliance upon the misrepresentation or omission. *Nelson v. Gas Research Inst.*, 121 P.3d 340, 344 (Colo. App. 2005). Avanza moves to dismiss the Plaintiffs' common-law fraud claims, arguing that the Plaintiffs have failed to allege a

---

[7] Although the parties have not focused on it, the critical operative language of § 6-1-113(2) may be its reference to a private action. A regulatory action can be initiated by the attorney general or district attorney for violations of the CCPA in accordance with § 6-1-110. In such action, civil penalties can be imposed in accordance with § 6-1-112. Such action is brought on the behalf of the public and penalties are payable to the general fund. Reading such sections together with § 6-1-113(2), it would appear that the Colorado Assembly intended that the interests of plaintiff classes would be protected by the attorney general or district attorney, rather than through private action.

misleading statement, Avanza's knowledge of the misleading character of the statement, and the Plaintiffs' own reliance upon it.

The Court finds each of Avanza's arguments to be meritless. As noted above, the "great way to save - plus 10%" language is readily susceptible to an interpretation which promises 10% savings, not a 10% surcharge, to customers. Moreover, one could reasonably infer from Avanza's use of such an unorthodox pricing model, coupled with promotional language that tends to obscure, rather than highlight, that pricing policy, that Avanza specifically expected and intended that its customers might misunderstand the nature of the policy. Although Avanza may be correct that the specific allegations as to each Plaintiff's reliance on the "great way to save - plus 10%" language are largely conclusory, the Court cannot say, in the particular circumstances of this case, that more detail is necessary to put Avanza on notice of the Plaintiffs' claims.

It may ultimately be revealed through discovery that particular Plaintiffs cannot prove that they relied upon the "great way to save - plus 10%" language (or any other misrepresentations or omissions that may be established) when deciding when and how often to patronize Avanza,[8] but that is a matter that is best dealt with at summary judgment. At the pleading stage, the Court finds that under the particular circumstances of this case, a largely conclusory assertion that the Plaintiffs relied upon Avanza's misleading advertising is sufficient

---

[8]Avanza appears to argue that, because customer receipts disclosed the 10% surcharge, the Plaintiffs could not have relied upon the advertising materials to believe they were instead receiving a 10% savings. There are passing mentions that one the Plaintiffs noticed the 10% surcharge listed on her receipts, but the Amended Complaint does not elaborate. The Court is not prepared to say that, based on these limited factual allegations, the element of reliance cannot be satisfied. The manner in which the 10% surcharge was disclosed on the receipt and the reasonableness of the Plaintiffs' diligence (or lack thereof) in reviewing the receipts inform the reliance question in fact-dependent ways, such that dismissal at the pleading stage would be inappropriate.

to state a claim for common-law fraud.

### D. Civil theft

Finally, the Court turns to the Plaintiffs' claims for civil theft under C.R.S. § 18-4-405. That statute provides that "the owner [of property obtained by theft, robbery, or burglary] may maintain an action not only against the taker thereof but also against any person in whose possession he finds the property." To plead a claim for civil theft, the Plaintiffs must allege facts showing that Avanza obtained control over the Plaintiffs' property in circumstances amounting to "theft, robbery, or burglary."[9] Such theft may occur where a person simply takes another's property without authorization, or in more complicated circumstances, such as where the person, via deception, obtains the owner's authorization to take the property. *West v. Roberts*, 143 P.3d 1037, 1040 (Colo. 2006).

Avanza argues that the Plaintiffs' civil theft claims are untimely. Civil theft claims are subject to a two-year statute of limitations. *Maez v. Springs Automotive Grp.*, 268 F.R.D. 391, 395 (D. Colo. 2010). The Amended Complaint alleges that the Plaintiffs shopped at Avanza from June 2008 to March 2009. This action was commenced in the Colorado District Court for Denver County on June 20, 2011. Thus, the question presented is when the Plaintiffs' civil theft claims accrued.

C.R.S. § 13-80-108 generally governs the question of accrual of claims. Whether a civil theft claim under C.R.S. § 18-4-405 is characterized as "a cause of action for injury to person

---

[9]The statute also creates liability in a person who actually possesses property taken from a plaintiff through theft, even if the person in possession did not commit the theft. Given the nature of the allegations here, the Court does not understand the Plaintiffs to contend that Avanza is the innocent possesor of property that was taken from them by someone else.

15

[or] property," C.R.S. § 13-80-108(1), or whether, in the circumstances here, it is better described as "a cause of action for fraud, misrepresentation, concealment, or deceit," C.R.S. § 13-80-108(3), is largely immaterial; in either circumstance, the cause of action accrues on the date that the injury or deceit "is [known/discovered] or should have been [known/discovered] by the exercise of reasonable diligence." Thus, the Plaintiffs' civil theft claims accrued at the point in time in which the Plaintiffs either knew or discovered that they were being charged an additional 10% on their purchases, or at the time that they reasonably **should have** known or discovered that fact.

The Amended Complaint indicates that Plaintiff Margaret Martinez actually discovered the existence of the 10% surcharge on January 27, 2009, as a result of examining her receipts. Because Ms. Martinez had actual notice of the purported deception as of that time, her civil theft claim accrued on January 27, 2009, and thus was barred by the statute of limitations as of January 27, 2011, prior to the filing of this action in June 2011. Thus, her civil theft claim is dismissed as untimely.

The Amended Complaint does not address the dates upon which any other Plaintiff actually discovered the existence of the 10% surcharge. Avanza argues that because the 10% surcharge was displayed on customers' receipts, and all the Plaintiffs at issue here completed their shopping by March 2009, they were on constructive notice of the surcharge for more than two years prior to the filing of this action, rendering all of the civil theft claims untimely. Although it may ultimately be that conspicuous disclosure of the 10% surcharge on customer' receipts might be sufficient to put the customers on constructive notice of the surcharge, the Court is not prepared to dismiss the civil theft claims on that ground at this early stage of the

litigation. Assuming that the surcharge is displayed on customer receipts, the record does not reflect where and how the surcharge is disclosed. Whether the disclosure of the surcharge is so sufficiently clear and conspicuous that a customer exercising reasonable diligence should be expected to promptly discover it is a question better suited for analysis on a full factual record at the summary judgment stage.

As to Avanza's argument that the Plaintiffs fail to adequately plead the elements of a civil theft claim – specifically, that Avanza committed a "theft" – the Plaintiffs are required to allege facts showing that Avanza "knowingly obtain[ed] or exercis[ed] control over anything of value of [the Plaintiffs] without authorization, *or by threat or deception*, and ... [i]ntend[ing] to deprive the [Plaintiffs] permanently of the use or benefit of the thing of value." *West v. Roberts*, 143 P.3d 1037, 1040 (Colo. 2006) (emphasis in original). Although the Amended Complaint does not allege such facts verbatim, a reasonable inference to be drawn from its allegations is that the Plaintiffs contend that Avanza obtained control over their money – specifically, the 10% surcharge they paid – by means of deception, and that Avanza intended to retain that money permanently. Thus, under the liberal standards of Rule 8, the remaining Plaintiffs have adequately pled the elements of civil theft.

## CONCLUSION

For the foregoing reasons, Avanza's Motion to Dismiss **(# 14)** is **GRANTED IN PART**, insofar as Plaintiff Margaret Martinez's civil theft claim is **DISMISSED** as untimely, and **DENIED IN PART** in all other respects.

Dated this 13th day of August, 2012

**BY THE COURT:**

_Marcia S. Krieger_

Marcia S. Krieger
United States District Judge