**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger**

**Civil Action No. 11-cv-02092-MSK-KLM**

**MARGARET MARTINEZ;
MARIA ELENA CASTONON;
JORGE DOMINGUEZ RAMIREZ;
CAROLINA CRUZ;
MARIA BERENICE CRUZ RAMOS;
ROSA BAUTISTA;
PEDRO ROMAN;
TEODORO RUEDA;
MARTHA GARCIA;
ADELIA VALDEZ;
GENOVEVA RODRIGUEZ;
MARIA DURAN;
REFUGIO DE LA CRUZ;
JUAN RODRIGUEZ;
EVA DE LA CRUZ;
BARBARA JOJOLA;
LETICIA SILVA;
RAFAEL CASTANEDA;
MARIA CHAVEZ EGUIA;
JUANA MARTINEZ;
ALFREDO LEDEZMA;
JOSE ESPITIA, JR.;
RAYMOND VALDEZ;
JORGE TERRAZA MONTOYA;
MARICA LARIZ;
PRUDENCIA DE LA ROSA;
MARIA NIEBLAS;
JOSE ARRENDONDO;
MARIA VALASQUEZ;
CARMEN BERMUDEZ;
PATRICIA CASTANEDA;
JOSE JUAN RAMIREZ;
MARIA TRINIDAD OSORIO;
TINA MONTEZ;
DORA LIZ CRUZ;
MAYRA CARMONA;
LETICIA JIMINEZ;
MAURICIO CACCIA;**

1

**RITA ORALIA SIERRO;**
**LORENZO POSADA;**
**MARIA MONTOYA;**
**MARISELA SAYAGO;**
**MIGUEL TOLEDO;**
**ROCIO AGUILERA;**
**MARIA RAMIREZ;**
**OSCAR PEREZ;**
**JUVENAL TORRES;**
**CONSUELO TORRES;**
**HILDA CORDIAL;**
**NANCY CRUZ RAMOS;**
**ESPERANZA RAMOS PADILLA;**
**TANIA ANDRADE REYES;**
**HERIBERTO MARTINEZ;**
**CYNTHIA MARTINEZ;**
**TANIA MARTINEZ;**
**SERGIO SOSA, JR.;**
**FELIPE CERVANTES;**
**SUSANA ORELLANA;**
**IRMA SKINNER;**
**LUIS GARCIA;**
**ROSA BOTELLO;**
**MARIA DEL CARMEN CONTRERAS;**
**GLORIA FERNANDEZ;**
**JAVIER HERNANDEZ;**
**LIDIA JAIME CARDENA;**
**MARIA DEL CARMEN SALAZAR;**
**ESMERALDA OSEGUERA MARTINEZ;**
**REYNA MORALES;**
**ANA MELGAR;**
**GUSTAVO JACO;**
**MARIA DE JACO;**
**MARIO MOLINA;**
**MARCO CHAVEZ;**
**YANIRA JACO;**
**ANGEL BANUELOS;**
**CESAR YANEZ;**
**MARISELA ROMERO;**
**CLAUDIA JAVIER;**
**MAGDALENA GARCIA;**
**ROSAURA L DE MERAZ;**
**JUAN CARLOS ARRENDONDO;**
**RAMON HOLGUIN; and**

2

**JOSE LUIS SANCHEZ, on behalf of themselves and all others similarly situated,**

    **Plaintiffs,**

**v.**

**NASH FINCH COMPANY, d/b/a Avanza Supermarket,**

    **Defendant.**

---

### OPINION AND ORDER ADOPTING RECOMMENDATIONS, DENYING MOTION FOR CLASS CERTIFICATION, AND DENYING MOTION FOR SUMMARY JUDGMENT

---

**THIS MATTER** comes before the Court pursuant to the Plaintiffs' Objections (**# 115**) to the Magistrate Judge's January 30, 2013 Recommendation (**# 112**) that the Plaintiffs' Motion for Class Certification (**# 49**) be denied, the Defendant's response (**# 119**), and the Plaintiffs' reply (**# 122**);[1] the Plaintiffs' Motion for Summary Judgment on Counts I and III of the Amended Complaint (**# 73**), the Defendant's response (**# 80**), and the Plaintiffs' reply (**# 84**); the Plaintiffs' Objections (**# 101**) to the Magistrate Judge's November 30, 2012 Order (**# 95**) granting the Defendant's oral motion to recover the cost of interpreter's fees for an aborted deposition of one of the Plaintiffs, the Defendant's response (**# 104**), and the Plaintiffs' reply (**# 105**); and the Magistrate Judge's Recommendation (**# 96**) that certain specified Plaintiffs be dismissed from this action for failing to perform their obligations as litigants, to which no party has filed objections.

---

[1] This ruling renders moot the Defendant's Motion to Continue (**# 123**) a pending Rule 702 hearing, as that request was premised upon the parties' desire for a ruling on the class certification issue before embarking on the Rule 702 hearing.

# FACTS

The Defendant operates a chain of grocery stores under the name "Avanza," primarily serving a Hispanic demographic.  In 2008 and 2009, Avanza allegedly promoted itself through flyers and advertisements, in English and Spanish, bearing the phrase "A great way to save – plus 10% at the register!"[2]  The Plaintiffs, customers of Avanza, state that they understood those advertisements to promise that they would save 10% off Avanza's stated prices at the time of checkout, but in actuality, Avanza was adding an additional 10% onto its stated prices at the time customers checked out.  The Plaintiffs assert three claims in this action: (i) violation of the Colorado Consumer Protection Act ("CCPA"), C.R.S. § 6-1-101 *et seq.*; (ii) common-law fraud under Colorado law; and (iii) civil theft pursuant to C.R.S. § 18-4-405.

The Plaintiffs have moved **(# 41)** under Fed. R. Civ. P. 23 to certify a class to pursue the claims herein.  The proposed class is defined as "all persons who made purchases at Avanza Federal, Avanza Pecos, or Avanza Greely locations, at any time during which the 'A Great Way to Save – Plus 10% at the Register' priority program was in effect, who were actually charged 10% more for item(s) at the register by the store."  The Court referred the motion to the Magistrate Judge for a Recommendation.  On January 30, 2013, the Magistrate Judge recommended **(# 112)** that the motion be denied.  Specifically, the Magistrate Judge found that: (i) based on a prior ruling by this Court **(# 57)**, the Plaintiffs could not obtain any monetary relief on their CCPA claim if pursued as a class action, and thus, class certification for pursuing that claim should be denied; (ii) that with regard to the remaining claims, the Plaintiffs' estimate that

---

[2]      The Plaintiffs' Objections to the Magistrate Judge's class certification recommendation indicate that in September 2008, Avanza changed the language in its promotional materials from reading "plus 10% at the register" to read "a charge of 10% will be added at the register."

the class would entail more than 33,000 potential members was sufficient to show requisite numerousity; (iii) that there are questions of law or fact common to the proposed class, such as "whether Defendant advertised the items purchased by Plaintiffs under the Shelf Plus 10 program" and "whether Defendant added ten percent to the price of each item at the register"; (iv) that the claims of the proposed class representatives (apparently all 83 of the named Plaintiffs[3]) are typical of the claims of the putative class with regard to the common questions; (iv) that the Plaintiffs counsel would adequately represent the class, but that the proposed class representatives would not adequately and fairly represent the class because they "[had] little idea of what a class action entails or of what [their] duties as a class representative may be"; and (v) under Fed. R. Civ. P. 23(b)(3), individualized issues would predominate over common issues, as the fraud-type claims asserted by the Plaintiffs "involve intensely individualized application of the law to the facts of each Plaintiff's transactions."[4]

The Plaintiffs filed timely Objections (**# 115**) arguing: (i) that the Magistrate Judge erred in refusing to reconsider this Court's prior ruling that monetary damages are not available in a CCPA action pursued by a class; (ii) that the Magistrate Judge erred in finding that the class representatives would not fairly and adequately discharge their duties due to the testimony of a single proposed representative (and in support of this contention, the Plaintiffs supply affidavits

---

[3]     The Plaintiffs' class certification motion does not identify any particular Plaintiff or Plaintiffs who would purport to serve as class representative, suggesting that the Plaintiffs believe that all 80+ named Plaintiffs could (or would) serve that role.

[4]     The Recommendation explained that each transaction by each individual Plaintiff would have to be separately examined to determine, "for example, whether each Plaintiff saw the advertisements, whether each Plaintiff relied on the advertisements in making his or her purchases, whether each Plaintiff asked questions of store personnel, what, if anything, each Plaintiff was told, and whether each Plaintiff's reliance on the advertisements continued after any such discussion."

of six additional Plaintiffs attesting to their willingness and intention to serve as class representatives); (iii) that the Magistrate Judge erred in finding that the common issues did not predominate over individualized issues because Avanza's conduct was uniform as to all Plaintiffs.

Separately, the Plaintiffs have moved **(# 73)** for summary judgment on their CCPA and civil theft claims, arguing that a Confession of Judgment agreed to by the Defendant in an action in state court,[5] alleging the same CCPA and civil theft claims, collaterally estops the Defendant from defending against those claims here.

There are additional matters pending whose procedural posture the Court will address as part of its analysis.

## ANALYSIS

### A. Recommendation to dismiss non-cooperating Plaintiffs

The Court begins with the Magistrate Judge's Novembe 30, 2012 Recommendation **(# 6)**. That Recommendation notes that certain named Plaintiffs repeatedly failed to respond to discovery requests and failed to maintain communication with the Plaintiffs' counsel.  The Defendant requested sanctions against the non-compliant Plaintiffs (and the Plaintiffs' counsel sought to withdraw from representing them).  The Magistrate Judge found that these Plaintiffs had demonstrated a lack of interest in prosecuting the case and had failed to comply with Court orders.  The Magistrate Judge then proceeded to address the *Ehrenhaus* factors, *Ehrenhaus v. Reynolds*, 965 F.2d 916 (10th Cir. 1992), and concluded that dismissal of those Plaintiffs  was appropriate.  Thus, the Magistrate Judge: (i) recommended that the claims by the non-responding

---

[5]     *Payan v. Nash Finch Company*, Colo. Dist. Ct., Adams County, case no. 08CV2031.

Plaintiffs be dismissed with prejudice; (ii) directed that the Plaintiffs' counsel provide those individuals with notice of the Recommendation at their last known address; and (iii) directed that, upon providing those Plaintiffs with copies of the Recommendation, the Plaintiffs' counsel was granted leave to withdraw from further representation of them.  The Plaintiffs' counsel has certified that it gave notice to the affected Plaintiffs' as required.

No party has filed objections to the Recommendation.  The Court has nevertheless reviewed it under the otherwise applicable *de novo* standard under Rule 72(b), and upon such *de novo* review, reaches the same conclusions as the Magistrate Judge and for the same reasons. Accordingly, the Court adopts the Recommendation and imposes sanctions, in the form of dismissal with prejudice pursuant to Fed. R. Civ. 41(b) for failure to prosecute and failure to comply with Court orders, of all claims asserted by the following Plaintiffs: Juan Carlos Arrendondo, Rafael Castenada, Carolina Cruz, Prudencia De La Rosa, Rosaura De Meraz, Maria Del Carmen-Salazar, Jose Espitia, Ramon Holguin, Maria Jaco, Claudia Javier, Ana Melgar, Jose Juan Ramierz, Marisela Romero, Jose Luis Sanchez, Marisela Sayago, Irma Skinner, Miguel Toledo, Adelia Valdez, Juana Martinez, Raymond Valdez, and Maria Lariz.

## B.  Class certification

The Court reviews the objected-to portions of the Magistrate Judge's recommendation as to certification of a class *de novo*.  Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b).

### 1.  Availability of monetary relief under the CCPA

The Magistrate Judge concluded that certification of a class was precluded, for purposes of the Plaintiffs' CCPA claim, pursuant to this Court's August 13, 2012 Opinion an Order **(# 57)**. That Order was issued in response to the Defendant's motion to dismiss the Plaintiffs' CCPA

claim on the grounds that the Plaintiffs were purporting to assert that claim on behalf of a class, but that C.R.S. § 6-1-113(2) provided that no monetary relief was available in class-based claims.  In response, the Plaintiffs conceded that the statute barred recovery of statutory or treble damages on a class-wide basis, but argued that certain caselaw contemplated the availability of actual damages in a class CCPA claim.  This Court, assuming for purposes of the Order that a class would be certified, found that the plain language of C.R.S. § 6-1-113(2) prohibited monetary relief of any kind in class actions.

In their Objections, the Plaintiffs essentially ask the Court to reconsider its prior ruling, citing the same case they had previously relied upon (and which this Court addressed extensively in its ruling), as well as three other cases in which Colorado courts have mentioned CCPA claims being pursued as a class, but which do not purport to address the question of whether monetary relief is available to a class under C.R.S. § 6-1-113(2).

Treated as a request for reconsideration of the Court's August 13, 2012 Order, the Plaintiffs' objections were made more than 14 days after entry of that Order, and thus, are analyzed under Fed. R. Civ. P. 60(b).  *Commonwealth Property Advocates, LLC v. Mortgage Electronic Registration Systems, Inc.*, 680 F.3d 1194, 1200 (10th Cir. 2011).  Relief under Rule 60(b) is appropriate in cases of "mistake, inadvertence, surprise, or excusable neglect," as well as to address newly-discovered evidence.  *Id.*  It is not a vehicle to "reargue an issue previously addressed by the court when the motion merely advances new arguments or supporting facts which were available at the time of the original motion."  *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

Here, the Plaintiffs do not allege that, as a result of mistake, inadvertence, or surprise, they were prevented from putting forward with arguments and authority they now assert. Rather, they are simply seeking another bite at the proverbial apple, in the hope that a more focused or better-supported argument than they previously asserted can warrant a different result. As *Paraclete* makes clear, this is not the proper function of a request for reconsideration, and thus, the Court denies it on that ground alone.

In any event, the Court is unpersuaded by the additional argument and authority cited by the Plaintiffs. As the Court's August 2012 Order notes, C.R.S. § 6-1-113(2) is clear and unambiguous, stating that "except in a class action, [items of monetary relief, including actual damages, are available under the CCPA]." The only reasonable reading of the statutory language is that the enumerated items of monetary relief are <u>not</u> available in class actions. The Plaintiffs offer no argument whatsoever as to why the statute should be read differently than its plain language directs. The mere fact that there are cases that simply mention – without purporting to discuss or analyze -- CCPA claims that have been brought in a class action does nothing to defeat the clear statutory language. It is axiomatic that case law is only persuasive to the extent that the court is considering and deciding specific arguments presented to it, and it is undisputed that the new cases the Plaintiffs' cite do not purport to consider the question of whether monetary damages are available to a class under the CCPA. (Moreover, the Court notes that the fact that monetary relief is not available to a class under the CCPA does not mean that a class can <u>never</u>

pursue a CCPA claim; other types of relief, such as declaratory or injunctive relief, are arguably

available even to classes under the CCPA.[6])

Accordingly, the Court overrules the Plaintiffs' objections on this point.[7]

## 2. Adequacy of representation

The Plaintiffs argue that the Magistrate Judge erred in concluding that because the first-

named Plaintiff, Margaret Martinez, would not be an adequate class representative, due to her

lack of understanding as to her obligations on behalf of the class, that none of the Plaintiffs could

adequately represent the class.  The Plaintiffs point out that, in situations where multiple class

representatives are identified, "it is not necessary that all the representatives [demonstrate the

ability to adequately represent the class]; as long as one of the representatives is adequate," the

requirement of Rule 23(a)(4) is met.  *Cook v. Rockwell Intern. Corp.*, 151 F.R.D. 378, 387

(D.Colo. 1993).  They offer the affidavits of several Plaintiffs who purport to understand their

responsibilities as litigants, their status as representatives of the class, and their obligations to

comply with orders of the Court and to refrain from actions that would jeopardize the interests of

the class.

---

[6]      The Court understands the Magistrate Judge's refusal to consider the CCPA claim as part of the subsequent class certification examination as reflecting an understanding that the Plaintiffs were only seeking monetary relief under the CCPA (and thus, would not bother to pursue the CCPA claim at all if a class was certified).  Arguably, the Plaintiffs could pursue a CCPA claim on a class basis to seek non-monetary relief, but the Plaintiffs have given no indication that they would seek to do so.  This Court will similarly assume that, if deprived of the opportunity to recover money damages as a class under the CCPA, the Plaintiffs would abandon that claim if a class were certified.

[7]      The Plaintiffs request that the Court consider certifying the question to the Colorado Supreme Court pursuant to Colo. App. R. 21.1(a).  The Court declines to do so, insofar as it finds that the statutory language is unambiguous.

This Court is reluctant to accept such a showing for several reasons.  First, as the Plaintiffs admit, these are new facts, raised for the first time in the Objections.  The Plaintiffs are correct that the Court has the discretion to permit the submission of supplemental evidence, unseen and unconsidered by the Magistrate Judge, when reviewing a recommendation *de novo*. *Adams v. Dyer*, 223 Fed.Appx. 757, 760 n. 3 (10th Cir. 2007) (unpublished); *Henderson v. Echostar Communications Corp.*, 172 Fed.Appx. 892, 895 (10th Cir. 2006) (unpublished). However, the Plaintiffs have not offered any explanation as to why they failed to produce such evidence earlier.  The Defendant raised the precise issue of Ms. Martinez's inadequacy in their response to the Plaintiff's motion for class certification.  In reply, the Plaintiffs essentially concede deficiencies in Ms. Martinez's adequacy (accusing the Defendant of "cherry-pick[ing] on Plaintiff [who] is not a legal scholar who has full command of the intricacies of a class action"), yet they did not purport to offer the affidavits they now tender as a cure.  Instead, the Plaintiffs simply offered generic arguments about the qualities of "Lead Plaintiffs" as an undifferentiated whole.   From this, the Court can only assume that the Plaintiffs are operating reflexively, reconfiguring their unsuccessful arguments to overcome adverse findings by the Court, rather than deciding in advance what arguments and evidence best reflect their case and presenting those arguments to the Court in the first instance.

Second, the Court sees little persuasive value in six identical affidavits, clearly drafted by Plaintiffs' counsel, attesting to the affiants' understanding of and willingness to assume the responsibilities of class representative.  Presumably, Ms. Martinez would have signed a similar affidavit, had it been placed in front of her by her counsel, and yet as the Magistrate Judge found (and the Plaintiffs do not dispute), her deposition testimony tells a different tale.  As noted

above, more than 20 of the original 83 Plaintiffs have been dismissed from this action for failing to comply with Court orders and their responsibilities as litigants, and yet the Plaintiffs' motion for class certification essentially represented that <u>all</u> of the named Plaintiffs could serve as adequate class representatives.  Accordingly, the Court is extremely wary of deeming the tendered affidavits sufficient to cure the defect in adequacy of representation noted by the Magistrate Judge.

Ultimately, it is not necessary for this Court to conclusively resolve this question, however, because, as discussed below, the Court finds class certification is inappropriate due to the predominance of individualized issues presented here.

### 3. Predominance

Pursuant to Rule 23(b)(3), a class action in this type of case can only be certified if the Court makes two additional finding: (i) that the common questions of law or fact "predominate over any questions affecting only individual members," and (ii) that a class action is "superior to other available methods of fairly and efficiently adjudicating the controversy."

The first step in assessing predominance entails consider the elements of the underlying cause of action.  *Erica P. John Fund, Inc. v. Halliburton Corp.*, 131 S.Ct. 2179, 2184 (2011).  Here, the claims at issue are common-law fraud and civil theft.   Both have, as their key elements: (i) that the Defendant made a false representation, and (ii) that the Plaintiffs justifiably relied on that misrepresentation to their detriment.  *See generally Vinton v. Virzi*, 269 P.3d 1242, 1247 (Colo. 2012); *West v. Roberts*, 143 P.3d 1037, 1040 (Colo. 2006).

As the Magistrate Judge found, there are questions of law and fact that are common to all of the potential class members here, but all of those questions bear only on the first major

12

element – whether the Defendant made a false representation.  There are common factual questions, such as what forms of advertising the Defendant used, the contents of those advertisements, and the time frames and locations in which they were used.  There is also one common legal question, namely, did that advertising contain a false representation.  Although these questions are material, the Court finds that the factual questions are not likely to be in material dispute – it is very likely that the parties can agree, in large part, on the basic facts regarding the manner and content of Avanza's advertising.  Thus, the only common issue that is likely to be vigorously contested is the question of whether the advertising was false or deceptive.

On the other hand, the second major issue – justifiable reliance – presents a multitude of issues that must be examined on an individualized basis. *See generally American Safety Equip. Corp. v. Winkler*, 640 P.2d 216, 222 (Colo. 1982), *citing* Restatement (Second), Torts § 402B, comment j.[8]

---

[8]     The general rule stated in section 402B of the Restatement is that one who makes a false representation in advertising can be liable to those who justifiably rely on that advertisement. Comment j discusses the concept of "justifiable reliance":

> . . . It does not apply where the misrepresentation is not known, or there is indifference to it, and it does not influence the purchase or subsequent conduct.  At the same time, however, the misrepresentation need not be the sole inducement to purchase. . . and it is sufficient that it has been a substantial factor in the inducement.

First, the Court must determine whether each Plaintiff or class member was even aware of the advertising in question, as one cannot rely on something one has not seen or considered.[9] A shopper's decision to patronize a store can arise out of any number of circumstances – geographical convenience, product availability, habit, ease of parking, etc. -- entirely unrelated to that store's advertising efforts.  The proposed class encompasses every single shopper who patronized Avanza during the time period at issue, making no allowance whatsoever for shoppers who did so without any regard whatsoever to Avanza's advertising.

For those that did see the advertising, the Court must next inquire as to how each individual Plaintiff or class member construed it.  The Defendant points to deposition from some Plaintiffs to the effect that they understood Avanza's signs as Avanza did: that a 10% surcharge would be added to posted prices at the time of checkout.  (The Recommendation also posits the possibility that some shoppers might have sought clarification from Avanza employees about the meaning of the signs, adding additional layers of individualized issues concerning how an employee might have responded to such a question and how the shopper interpreted that response.)

For those that both saw Avanza's advertisements and misunderstood their true meaning, the Court must then proceed to determine whether each individual made the decision to purchase items because of the alleged savings[10] – that is, whether the advertisement's apparent promise of

---

[9] The Court is assuming that the Plaintiffs are not contending that Avanza's "great way to save –plus 10%" had some subliminal effects on shoppers who did not consciously read such advertisements.

[10] It is not clear to the Court whether the misrepresentation at issue is that shoppers would save 10% off posted prices, or whether it is the concealment of the fact that they would be charged 10% over posted prices.  Arguably, some shoppers might have been deceived in both respects, suffering a 20% deviation from their expectations.

savings was a substantial factor in the decision to purchase.  A shopper who was determined to purchase certain items regardless of their cost or potential savings cannot be said to have relied upon Avanza's alleged misrepresentations.

These inquiries merely determine which Plaintiffs or class members <u>actually relied</u> on the alleged misrepresentations; now the Court proceeds to examine whether such reliance was justifiable, requiring even more individualized assessments.  The Defendant has pointed to the depositions of several Plaintiffs who acknowledged observing the 10% surcharge on their printed receipts, yet who continue to shop at Avanza.  Certainly, any Plaintiff with <u>actual</u> notice of the 10% charge can  no longer claim to have justifiably relied upon misleading advertising for subsequent purchases, and thus, these Plaintiffs or class members' claims must be limited to purchases made before discovering the surcharge. *Winkler*, 640 P.2d at 222 (actual knowledge of facts, even though contrary to seller's representations, "totally nullifies justifiable reliance").  Other Plaintiffs or class members might not have ever noticed the surcharge printed on the receipt, but that raises additional individualized questions as to whether the shopper <u>should have</u> noticed it.  *See Winkler*, 640 P.2d at 222-223 ("justifiable reliance contemplates the reasonable exercise of knowledge and intelligence in assessing the represented facts").

And, of course, each Plaintiff or class member's damages will require an individualized assessment.

Under these circumstances, the Court is convinced that individualized questions of reliance significantly predominate over the common questions of fact and law relating to whether Avanza's representations were, in the abstract, misleading.

In their Objections, the Plaintiffs do not materially grapple with the questions of common and individualized questions of fact and law present here; instead, they rely primarily on citations to cases in which courts decided to certify classes in fraud-based cases.  For the most part, the Court finds these cases unpersuasive.

In *Maez v. Springs Automotive Group, LLC*, 268 F.R.D. 391, 397 (D.Colo. 2010), the court found Rule 23(b)(3) satisfied in a suit in which purchasers of used cars were overcharged for the cost of obtaining title certificates.  The plaintiffs there asserted claims sounding in violation of the Truth In Lending Act, as well as civil theft under Colorado law.  *Maez* is unpersuasive in the first instance because the court there never specifically articulated the individualized issues it found to be subordinate to the common issues.  The only material discussion of the issue is the court's statement that "if the liability issue is common to the class, common questions are held to predominate over individual questions."  *Id.*  Without addressing whether this rule is as categorical as *Maez* states, it is sufficient to note that one of the two claims in *Maez*, the Truth In Lending Act claim, apparently did not turn on any particular questions of individualized reliance.  Because all plaintiffs "signed form contracts containing identical provisions," liability under the Truth In Lending Act could likely be determined without consideration of individual reliance.  Here, however, reliance is at the heart of <u>both</u> claims that the Plaintiffs seek to pursue as a class, making *Maez* distinguishable.

In *Smith v. MCI Telecommunications Corp.*, 1990 WL 58708 (D. Kan. 1990), the plaintiffs were salespersons for the defendant, claiming that the defendant breached a contractual promise to pay them according to the company's commission plan, and additionally asserted claims sounding in common-law fraud.  The court certified a class to pursue the claim over the

16

objections of the defendant that, among other things, common issues of law and fact were overshadowed by individualized ones.  Addressing the contention that individual issues of reliance on the company's representations prevented class certification, the court referred back to an earlier order rejecting that argument, noting that "we [previously] found that the salespersons' reliance on the alleged misrepresentations was demonstrated by their acceptance of employment with MCI" and that determination of whether that reliance was reasonable "is an objective inquiry common to the entire proposed class."  *Smith* is distinguishable factually from this case, insofar as the Court cannot say here that shoppers' reliance on Avanza's advertising can necessarily be inferred from their decision to make purchases, nor that the Court can assess the reasonableness of that reliance objectively and in a single inquiry common to the entire class.  It may be fair to assume that every person who accepts a job does so with a common reliance upon the employer's promise of a specific compensation scheme; it is not appropriate to assume that every person who purchases a product at a grocery store does so because of representations made in that store's advertising.[11]

The Court pauses here to acknowledge an interesting passage from *Smith*.  It points to the Advisory Committee's notes to the 1966 amendments to Rule 23, which state:

> a fraud perpetrated on numerous persons by use of similar
> misrepresentations may be an appealing situation for a class action.

---

[11]     For the same reasons, the Court finds the Plaintiffs' reliance on *Elkins v. Equitable Life Ins. of Iowa*, 1998 WL 133741 (M.D.Fl. 1998), to be unpersuasive as well.  Besides being procedurally inapposite -- *Elkins* involved comments made by the court incident to approving a proposed class settlement in a case involving misstatements made in the sale of insurance-- it implicitly assumed that all class members could equally demonstrate reliance.  *Id.* at *17 ("all [class members] can claim to have already suffered injury in the purchase of a product that was other than as represented").  Here, for the reasons discussed above, there is no basis to assume that each proposed class member can necessarily claim to have justifiably relied on Avanza's advertising.

> . . . On the other hand, although having some common core, a
> fraud case may be unsuited for treatment as a class action if there
> was a material variation in the kinds of representation made or <u>in
> the kinds of degrees of reliance by the persons to whom they were
> addressed.</u>

*Id.* at *4-5 (emphasis added).  Contrary to the Plaintiffs' suggestion that class certification is generally appropriate in fraud cases, this Court reads the Advisory Committee note to emphasize the need for each case to be evaluated according to the particular elements of the claims at issue and mindful of those elements which are genuinely in contest.  In cases such as *Maez* and *Smith*, concerns of reliance were subordinate to questions of whether the defendant's representations were misleading; in this case, as discussed above, common questions of misrepresentation are subordinate to the individualized issues of reliance, a situation that the Advisory Committee notes acknowledges makes class certification inappropriate.

This Court finds a number of more factually-apposite cases justify refusal of certification in this case.  In *McLaughlin v. American Tobacco Co.*, 522 F.3d 215 (2d Cir. 2008), the plaintiffs sought certification of a class of persons who purchased cigarettes based on the manufacturer's advertising that such cigarettes were "healthier" than others, alleging that such representations were fraudulent.  Reversing the trial court's certification of the class, the Second Circuit explained that:

> proof of misrepresentation – even widespread or uniform
> misrepresentation – only satisfies half the equation; the other half,
> reliance on the misrepresentation, cannot be the subject of general
> proof.  Individualized proof is needed to overcome the possibility
> that a member of the purported class purchased Lights [the
> product] for some reason other than the belief that Lights were a
> healthier alternative – for example, if a Lights smoker was
> unaware of that representation, preferred the taste of Lights, or
> chose Lights as an expression of personal style.

*Id.* at 223.  *McLaughlin* is more akin to this case than are cases like *Maez* and *Smith*.  In those

cases, the alleged misrepresentations were precisely targeted at the class members and could be

expected to have influenced every potential "purchaser" in the same manner.  Here, as in

*McLaughlin*, the misrepresentations at issue are in the form of advertising, a broad-spectrum

communication made to an amorphous audience, and one whose effects cannot be precisely

correlated with subsequent purchasing decisions.  Certainly, some Plaintiffs patronized Avanza

in reliance upon its advertising, just as some smokers in *McLaughlin* purchased Lights based on

representations about their benefits.  But just as certification of the entire universe of Lights

purchasers was inappropriate in *McLaughlin*, due to uncertainties as to the nature and extent of

those purchasers' reliance on the deceptive advertising, so here it is inappropriate to assume that

every customer of Avanza relied upon its advertisements in the same way and to the same

degree.

Accordingly, the Court overrules the Plaintiffs' Objections and adopts the

Recommendation.  The Plaintiffs' motion for class certification is denied.

## C. Summary judgment

The Plaintiffs seek summary judgment against the Defendant on their CCPA and civil

theft claims, arguing that the Defendants submission to a Confession of Judgment in the *Payan*

case collaterally estops it from contesting those claims here.

Extensive recapitulation of the *Payan* litigation is unnecessary.  It is sufficient to note

that it involved the same claims as this case, and that on or about August 13, 2010, the Defendant

entered into a Confession of Judgment in that case that reads as follows:

> Nash Finch Company d/b/a Avanza Supermarket ("Defendant")
> hereby admits liability and confesses and agrees to the entry of

> judgment in favor of Plaintiffs Rosa Payan [etc.] on their
> remaining claims under the Colorado Consumer Protection Act ad
> for civil theft in the amount of $700.00 for each Plaintiff (a total of
> $4,200.)  Plaintiffs will retain their right to seek reasonable
> attorney's fees and costs.

The Plaintiffs here argue that the doctrine of collateral estoppel applies here to prevent the

Defendant from disputing any of the elements of liability on the CCPA and civil theft claims

here.

The doctrine of collateral estoppel, sometimes referred to as issue preclusion, bars

relitigation of issues necessarily decided in a prior action.  *Vanderpool v. Loftness*, ___ P.3d ___

2012 WL 2581047 (Colo.App. July 5, 2012), *citing Parklane Hosiery Co. v. Shore*, 439 U.S. 322

326 n. 5 (1979).  It exists to "relieve parties of multiple lawsuits, conserve judicial resources, and

promote reliance on the judicial system by preventing inconsistent decisions." *Id.*  Although

primarily used in a defensive capacity, here, the Plaintiffs seek to invoke the doctrine

"offensively," in order to "bar the defendant from relitigating an issue that the plaintiff must

prove and which the defendant previously litigated unsuccessfully against . . . another party."

*Id.*, *citing Parklane*, 439 U.S. at 326 n. 4.  Where the party asserting collateral estoppel was not a

party to the prior case, the doctrine is further classified as "nonmutual" collateral estoppel.  *Id.*

The party invoking collateral estoppel generally is required to show: (i) the issue sought

to be precluded is identical to an issue actually and necessarily determined in the prior

proceeding; (ii) the party against whom it is asserted was a party or is in privity with a party in

the prior proceeding; (iii) there is a final judgment on the merits in the prior proceeding; and (iv)

the party against whom it is invoked had a full and fair opportunity in the prior proceeding to

litigate the issue.  *Id.*

20

When a party invokes nonmutual offensive collateral estoppel, however, additional considerations arise, as such estoppel "does not promote judicial economy in the same manner as defensive use does and presents a unique potential for unfairness towards the party to be estopped." *Id.* In such circumstances, the Court must also consider: (i) whether the party seeking to assert preclusion could have joined the first action, but instead took a 'wait and see' approach; (ii) the extent to which the party to be estopped had incentive to litigate vigorously in the prior case; (iii) whether the decision sought to be relied upon is inconsistent with another decision involving the party sought to be estopped; and (iv) whether the second case affords the party to be estopped procedural protections that were unavailable in the first case. *Id.* The question of whether to permit nonmutual collateral estoppel to apply is a question of law, and courts are granted "broad discretion" in deciding whether to apply it or not. *Id.*

Courts require a party claiming offensive collateral estoppel to raise the issue promptly, or else be deemed to have waived it. *Id.* Generally, a party seeking to raise it must do so "at the first reasonable opportunity after the decision having preclusive effect has been rendered." *Id.*, *citing Evans v. Syracuse City School Dist.*, 704 F.2d 44, 47 (2d Cir. 1983). This is because the purpose of preventing re-litigation of issues is "fatally compromised" if the parties engage in such re-litigation before the invocation of estoppel surfaces. *Id.*

The Defendants argue that collateral estoppel is inappropriate here for several reasons, including: (i) that a confession of judgment does not result in a claim being "actually and necessarily determined"; (ii) that the issues raised in the *Payan* case are not "identical" to those presented here, insofar as *Payan* applied to advertisements during a narrower time window than the Plaintiffs here assert and the litigants in *Payan* were requesting payment of statutory damages

21

for a single violation whereas the Plaintiffs here seek actual damages for multiple purchases; were isolated to a particular timeframe comprising only a portion of the time period encompassed by the Plaintiffs' contentions here, rendering the issues to be resolved non-identical; (iii) that the Plaintiffs here could have joined the *Payan* suit but did not; (iv) that it had a lesser incentive to vigorously litigate the *Payan* suit than it does here because the plaintiffs there sought fixed statutory damages on an individualized basis, whereas the Plaintiffs here seek actual damages on behalf of a large class; (v) the Defendant has experienced inconsistent rulings on this issue, having prevailed in a similar suit brought by customers in Minnesota;[12] and (vi) that the Plaintiffs did not raise the issue timely.

The Court rejects the suggestion that confessions of judgment do not suffice to demonstrate that issues were "actually and necessarily determined" for collateral estoppel purposes.  Courts regularly recognize that stipulations contained in confessions of judgment can give rise to collateral estoppel,  *In re Burress*, 245 B.R. 871, 877 (Bankr. D. Colo. 2000), and here, the Defendant expressly conceded liability on both the CCPA and civil theft claims, admitting all of the necessary elements of those claims.   Moreover, the Court acknowledges that *Payan* may have presented a narrower factual case than the Plaintiffs do here, but by admitting to liability in *Payan*, the Defendant has, at the very least, conceded that same liability during the time frame in which this case and *Payan* overlap.

---

[12]      With regard to this last argument, the Defendants cogently point out an example given by the Supreme Court in *Parklane*: "a railroad collision injures 50 passengers, all of whom bring separate actions against the railroad.  After the railroad wins the first 25 suits, a plaintiff wins in suit 26. . . . offensive use of collateral estoppel should not be applied so as to allow plaintiffs 27 through 50 automatically to recover."  439 U.S. at 331 n 14.

However, the Court ultimately agrees with the Defendant that invocation of offensive collateral estoppel is inappropriate here. The Court agrees that, because the plaintiffs in *Payan* were each seeking a single payment of statutory damages, the Defendant's potential liability to them was capped. Thus, there was a valid economic justification for the Defendant to choose to resolve that case by submitting to its maximum potential economic liability ($4,200), rather than incurring a trial that would certainly cost the Defendant an order of magnitude more in fees alone, regardless of whether it won or lost. In hindsight, one might criticize the procedural mechanism that the Defendant chose to resolve the matter, but the fact remains that the decision to confess judgment rather than endure trial was one that speaks little about the Defendant's perception of the actual merits of the *Payan* plaintiffs' claims. As such, applying the doctrine of collateral estoppel to it would be unwarranted, particularly where the Plaintiffs here seek to leverage that small-scale economic decision into a much larger award (both in terms of number of plaintiffs and actual damages claimed).

The Court is also persuaded that the Plaintiffs here have simply waited too long to invoke the doctrine. The *Payan* Confession of Judgment was entered by the Court in August 2010. Thus, it has been in existence throughout the pendency of this case, which was filed in state court in July 2011. Nevertheless, the Plaintiffs raised its existence for the first time on September 25, 2012, a date both temporally (more than a year) and procedurally (after extensive motion practice and judicial intervention in discovery disputes) late in this case. In responding to the Defendant's argument, the Plaintiffs do not contend that they discovered the Confession of Judgment only recently or otherwise argue that they acted with all reasonable haste in bringing

the matter before the Court.[13]  They contend that the judicial proceedings undertaken to date were not unduly prolonged by not raising the issue earlier, arguing that the discovery they have proceeded to engage in "would be necessary even if the Court applied issue preclusion because the damages of individual Plaintiffs are not identical" and that "the issue of liability has only been litigated to a minimal degree at this point," but it is evident to the Court that the parties' discovery has spanned much more than just each Plaintiff's claimed damages.  *See e.g.* Docket # 73, Ex. B (deposition transcript of Defendant's Rule 30(b)(6) designee, examined by Plaintiffs' counsel on issues of liability).  Because the Plaintiffs' delay in raising the matter has caused the Court and the parties to incur a significant expenditure of resources already, the very purposes of permitting offensive estoppel are vitiated here.

Accordingly, the Court finds, in its exercise of discretion, that granting summary judgment to the Plaintiffs on the CCPA and civil theft claims under a nonmutual offensive collateral estoppel theory is not warranted here, and the Plaintiffs' motion for summary judgment is denied.

### D.  Interpreter fees

The final issue before the Court involves a November 29, 2012 ruling by the Magistrate Judge at a telephonic discovery hearing.  The minutes **(# 95)** from that hearing indicate that the Defendant made an oral motion "to recover $400 in interpreter fees," apparently incurred by the Defendant incident to a scheduled deposition of one of the Plaintiffs in which the deponent failed to appear.  The Magistrate Judge granted the motion, directing that "Plaintiff's counsel shall issue a check in that amount to defense counsel."

---

[13]      The parties acknowledged awareness of the *Payan* litigation at least as early as April 13, 2012 in a Motion for Protective Order **(# 36).**

On December 13, 2012, the Plaintiffs filed timely Objections (**# 101**) to that ruling, explaining that the deposition in question was that of (former) Plaintiff Maria Lariz, scheduled for October 23, 2012.  Ms. Lariz did not appear for the deposition as scheduled.  The Plaintiffs contend that they "made every attempt to ensure she would appear for her deposition," both before and on the scheduled date, but were unsuccessful.  They argue that pursuant to Fed. R. Civ. P. 37(d), a party's failure to appear at his or her own deposition warrant imposition of sanctions against the <u>party</u>, and acknowledge that Rule 37(b)(2)(C) further permits the Court to award costs against a party <u>and/or</u> her counsel, "unless circumstances make an award of expenses unjust."  The Plaintiffs argue that awarding the $400 in interpreter fees against Plaintiffs' counsel is unjust, given counsel's diligent efforts to secure Ms. Lariz's attendance, and that the award should only be against Ms. Lariz personally.

The parties have supplied a transcript of the November 29, 2012 hearing.  After the parties recited the basic facts set forth above to the Magistrate Judge, the Magistrate Judge inquired of the Plaintiffs' counsel as follows:

> . . . let me ask you this question.  Somebody bore a $400 expense here for an interpreter to attend this deposition that your witness at the time failed to attend.  Who should bear the cost of that?  Who should bear the cost of your uncooperative plaintiff? . . . Do you think the defendant should bear that?  And why?

The Plaintiffs' counsel explained again the efforts she made to secure Ms. Lariz's attendance, and stated that "I would be willing to split the fee with them."  The Magistrate Judge heard some additional argument on the issue, and then ruled as follows:

> Pursuant to Rule 26(c), I may make any orders that are appropriate to protect a party or person from undue burden or expense.  I find in these circumstances the burden of these expenses should not be borne by the defendant.  I recognize that the plaintiff made

25

reasonable efforts to have this person attend her deposition, but I need to remind plaintiff's counsel that plaintiff, especially in cases of this nature, selects the people who plaintiff wants to have joined in the lawsuit.  This is a putative class action.  This is a person who you included, apparently, among your group of putative plaintiffs. It's a person who you represented was on board with the case.  I understand that it didn't work out the way you wanted it to, but the expense that was borne by the defendant to attempt to rightfully take this person's deposition . . . is not a expense that they should bear, it simply is not.  So under those circumstances, as I said, the motion is granted.

Determinations by the Magistrate Judge on non-dispositive issues are reviewed by this Court pursuant to Fed. R. Civ. P. 72(a), and will be reversed only if they are "clearly erroneous or contrary to law."  28 U.S.C. § 636(b)(1)(A); *Hutchinson v. Pfeil*, 105 F.3d 562, 566 (10th Cir. 1997); *Ariza v. U.S. West Communications, Inc.*, 167 F.R.D. 131, 133 (D. Colo. 1996). Accordingly, the Plaintiff's Objections will be overruled unless the Court finds that the Magistrate Judge abused his discretion or, if after viewing the record as a whole, the Court is left with a "definite and firm conviction that a mistake has been made." *Ariza*, 167 F.R.D. at 133, *citing Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir.1988).

Fed. R. Civ. P. 26(c) provides that "a party . . . may move for a protective order [and] the court may, for good cause, issue an order to protect [the] party . . . from  . . . undue burden or expense" relating to the discovery.  Rule 26(c)(3) indicates that "the award of expenses" under the Rule is governed by Rule 37(a)(5).  Rule 37(a)(5) provides that if the Court grants a protective order, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses."  Although the rule compels such payment, the Court may decline to grant such expenses upon a finding that "the opposing party's

26

nondisclosure . . . was substantially justified" or that "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A)(ii), (iii).

The Magistrate Judge construed the Defendant's oral motion as one arising under Rule 26(c) and found that the interpreter's fees constituted an "undue burden or expense" arising out of Ms. Lariz's conduct.  As a result, she found that it was appropriate to award the costs against the Plaintiffs.  She invited Plaintiffs' counsel to offer a response as to "who should bear the cost of that."  Notably, the Plaintiffs' counsel did not suggest that the Magistrate Judge should impose the sanction against Ms. Lariz herself.  Moreover, the Plaintiffs' counsel expressly acknowledged that <u>she</u> – not Ms. Lariz -- "would be willing to split the cost" with the Defendant. From this, the Magistrate Judge properly concluded that the Plaintiffs' counsel was willing to concede that some portion of the interpreter's fees could be properly awarded against her personally (not against Ms. Lariz).  The Magistrate Judge also permissibly concluded that it would be inappropriate to force the Defendant to bear the other half of that fee.

The record fully reflects that the Magistrate Judge was cognizant of the Plaintiffs' counsel's own diligent efforts to secure Ms. Lariz's attendance, and indeed, the Magistrate Judge acknowledged "that the plaintiff['s counsel] made reasonable efforts to have [Ms. Lariz] attend." But given the Plaintiff's counsel conceded that some form of an award against her personally was appropriate, and never suggested that the sanction should instead be borne by Ms. Lariz herself, the Court cannot say that the Magistrate Judge erred by agreeing with the Plaintiff's counsel as to <u>who</u> to impose the sanction upon, but only disagreeing as to <u>how much</u>.

Accordingly, the Plaintiffs' Objections are overruled and the Magistrate Judge's Order is affirmed.

## **<u>CONCLUSION</u>**

For the foregoing reasons, the Court **ADOPTS** the Magistrate Judge's Recommendation (**# 96**) and **DISMISSES** the claims by Plaintiffs Juan Carlos Arrendondo, Rafael Castenada, Carolina Cruz, Prudencia De La Rosa, Rosaura De Meraz, Maria Del Carmen-Salazar, Jose Espitia, Ramon Holguin, Maria Jaco, Claudia Javier, Ana Melgar, Jose Juan Ramierz, Marisela Romero, Jose Luis Sanchez, Marisela Sayago, Irma Skinner, Miguel Toledo, Adelia Valdez, Juana Martinez, Raymond Valdez, and Maria Lariz, with prejudice pursuant to Fed. R. Civ. P. 41(b).  The Clerk of the Court shall amend the docket to reflect the dismissal of these Plaintiffs. The Court **OVERRULES** the Plaintiffs' Objections (**# 115**) and **ADOPTS** the Magistrate Judge's January 30, 2013 Recommendation (**# 112**) in its entirety.  The Plaintiffs' Motion for Class Certification (**# 49**) is **DENIED**.   The Plaintiffs' Motion for Summary Judgment on Counts I and III of the Amended Complaint (**# 73**) is **DENIED**.  The Plaintiffs' Objections (**# 101**) are **OVERRULED**, and the Court **AFFIRMS** the Magistrate Judge's November 30, 2012 Order (**# 95**).  The Defendant's Motion to Continue (**# 123**) the Rule 702 hearing is **DENIED AS MOOT**.

Dated this 29th day of March, 2013.

**BY THE COURT:**

_Marcia S. Krieger_

Marcia S. Krieger
Chief United States District Judge